UNITED STATES of America, Plaintiff–Appellee,

v.

Lee Erwin JOHNSON, Defendant–Appellant.

No. 93–1676.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 28, 1994.

Decided May 2, 1994.

---

Jennifer J. Peregord (argued and briefed), Charles F. Holman, III, Office of U.S. Atty., Detroit, MI, for U.S.

Jonathan Epstein, Federal Public Defenders Office, Detroit, MI (argued and briefed), for Lee Erwin Johnson.

Before: KENNEDY, JONES, and SUHRHEINRICH, Circuit Judges.

KENNEDY, Circuit Judge, delivered the opinion of the court, in which JONES, Circuit Judge, joined. SUHRHEINRICH, Circuit Judge (pp. 684–86), delivered a separate dissenting opinion.

KENNEDY, Circuit Judge.

Defendant Lee Erwin Johnson, who entered a conditional plea of guilty to one count of a felon unlawfully in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), appeals the District Court's denial of his motions to suppress firearms and ammunition obtained during a warrantless state seizure and to suppress ammunition later seized pursuant to a federal search warrant. Defendant also appeals the sentencing enhancement imposed under the Armed Career Criminal Act, 18 U.S.C. § 924(e). For the reasons stated below, we reverse.

## I.

On January 23, 1991, at approximately 2:00 p.m., Detroit police officers John Collins and Phillip Ratliff went to the defendant's apartment in Detroit, Michigan. The officers were responding to a call that a young girl was missing and being held against her will at the defendant's apartment. Angela Skinner, 14, answered the door and told officers that the defendant had locked her in the apartment and would not release her. Skinner was alone, but was locked in the apartment behind an armored gate. The officers called their supervisor, Sergeant Aaron Carey for assistance. When Sergeant Carey arrived at the defendant's apartment approximately twenty minutes later, he authorized a forced entry. With the assistance of a neighbor's tools, the officers cut the padlock from the armored door and freed Skinner.

After Skinner was freed, she informed the officers that the defendant had forced her to have sexual intercourse with him several times over the past four days and threatened to shoot her or her family if she tried to leave. Skinner also told the police the defendant had guns in the apartment and had used these guns to threaten her. Skinner then showed the officers where the defendant kept these guns. The officers seized three guns and ammunition from the defendant's closet. A full search of the apartment was not conducted at that time.

The Detroit Police Department informed the Bureau of Alcohol, Tobacco, and Firearms ("ATF") that they had seized guns from the defendant's home. After further investigation, the ATF concluded that there was probable cause to believe that defendant was a felon unlawfully in possession of firearms. Thus, the ATF acquired a search warrant for the defendant's apartment for firearms, ammunition, documents and narcotics.[1] On

---

1. The affidavit supporting the search warrant for the defendant's apartment stated, among other things:

  1) Johnson had been convicted of burglary in June of 1983 in Detroit Recorder's Court;

2) three guns, two of which were loaded, had been seized from Johnson's apartment on January 23, 1991, although a full search had not been conducted;
3) two separate informants (sources of information or "SOI") had reported that they had

February 1, the ATF agents searched the defendant's apartment and seized live rounds of ammunition and documents. However, no additional firearms were found.

Defendant was arrested and indicted on one count of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and one count of unlawful possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Defendant filed a pretrial motion to suppress the firearms and ammunition seized by the Detroit police on January 23. However, the District Court refused to suppress the weapons seized, concluding that the seizure was justified by exigent circumstances and by Skinner's consent.

Next, the defendant filed a pretrial motion to suppress the ammunition seized by ATF agents on February 1 pursuant to a search warrant. Specifically, the defendant argued that because the warrant obtained for the later search was substantially based on the product of the prior illegal search, the warrant was therefore defective under the fruit of the poisonous tree doctrine. Additionally, the defendant argued that after excluding the weapons seizure information, the warrant contained insufficient information to support a finding of probable cause. The District Court rejected the defendant's argument that the warrant was invalid for several reasons. First, the District Court had already concluded that the January 23 search by Detroit police was valid and therefore the affidavit established probable cause. Additionally, the District Court decided that even if the warrant was defective, the subsequent search of the defendant's apartment and seizure of the ammunition was valid because the officers acted in good faith on the search warrant.

Pursuant to a conditional Rule 11 plea agreement, which preserved his right to chal-

lenge the District Court's denial of his suppression motions, the defendant pled guilty to count one, unlawful possession of a firearm by a convicted felon. Additionally, the government dismissed count two, unlawful possession of ammunition by a felon, as part of the agreement.

Prior to sentencing, the United States filed a notice identifying defendant as an armed career criminal within the meaning of 18 U.S.C. § 924(e). Despite defendant's objection, the District Court concluded that defendant was an armed career criminal and sentenced the defendant to the fifteen-year mandatory minimum. Defendant timely appealed the denial of his suppression motions and his sentencing enhancement as an armed career criminal.

## II.

We review the District Court's findings of fact under a clearly erroneous standard and its legal conclusions *de novo*. *See United States v. Duncan*, 918 F.2d 647, 650 (6th Cir.1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991).

## III.

Defendant urges this Court to reverse the District Court's denial of his motion to suppress the firearms and ammunition seized from his apartment by Detroit police on January 23 on the grounds that the warrantless search was unreasonable and cannot be justified based on Skinner's consent or the existence of exigent circumstances.

### A. Consent

The Fourth Amendment prohibits the warrantless entry of an individual's home, "whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111

---

seen Johnson in possession of both guns and drugs ("crack" cocaine) at various times since November of 1990;

4) SOI 2 stated that Johnson drove an older model Toyota with license plate number 000QPG; a vehicle check determined this car to be a 1981 Toyota registered to Johnson;

5) both SOI's identified specific places they had seen Johnson store guns inside his apart-

ment and confirmed they had been present on occasions during the previous three weeks when Johnson sold crack to others in the apartment building; and

6) sporadic surveillance of the apartment building on three occasions within the previous week had confirmed the presence of Johnson's car parked in front of the building.

L.Ed.2d 148 (1990). "The prohibition does not apply, however, to situations in which voluntary consent has been obtained ... from a third party who possesses common authority over the premises." *Id.* (citations omitted). The United States argues that Skinner had common authority over the apartment and therefore the third party consent exception applies to the seizure of the defendant's guns by the Detroit police.

■ Common authority over premises rests on

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242 (1974).

■ Initially, the defendant contends that the United States cannot prove voluntary consent because Skinner did not expressly consent to their entry into the apartment or to their seizure of the guns. While we agree that Skinner did not expressly state that she consented to the seizure of the guns or expressly invite the officers into the apartment, she did inform the officers that guns were present in the apartment and that the defendant had threatened both her and her family with the guns. Additionally, Skinner showed the police where the defendant kept the guns. Thus, we agree with the District Court that Skinner implicitly consented to the officers' entry into the apartment and their seizure of the guns.

Next, the defendant argues that even if Skinner consented to the search, she did not possess common authority over the closet in defendant's apartment. We agree that Skinner did not have actual authority to allow the police to enter the apartment and seize the guns. Indeed, the presence of the armored door illustrates that she clearly did not have authority to allow anyone to enter the apartment. However, the Supreme Court has held that all that is required is that "the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises." *Rodriguez,* 497 U.S. at 188, 110 S.Ct. at 2801 (quoting *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). Defendant argues the police were unreasonable in believing that Skinner, a kidnap victim, had common authority over the premises. Indeed, Skinner told officers that the defendant had locked her in his apartment and sexually assaulted her several times over the past four days. Also, Skinner told officers that the defendant had threatened both her and her family. The United States counters that Skinner had common authority over the interior of the apartment, despite her inability to leave, and therefore she could consent to the police entry and the seizure of the guns from the defendant's closet.

We conclude that a reasonable officer would not have believed that Skinner had common authority over the closet containing the defendant's guns. First, the officers knew that Skinner was physically restrained from leaving. Additionally, as far as the officers knew, Skinner had only been present at the apartment for four days. Finally, the guns were found in the defendant's closet. The United States has not produced any evidence that Skinner had personal possessions in the closet which would indicate common authority over the closet. The United States relies heavily on *United States v. McAlpine,* 919 F.2d 1461 (10th Cir.1990) in its brief; however, we find *McAlpine* distinguishable from the case *sub judice.* In *McAlpine,* Hale called police claiming that she was being held against her will by two men who were sexually assaulting her. When the police arrived, Hale let them in and told them that McAlpine forced her to take drugs and threatened her with weapons. Also, she told the police that she had been at the trailer for two months, slept in a back bedroom and had personal belongings scattered throughout the trailer. When asked where McAlpine kept the guns, Hale pointed to the back of the trailer. In the back bedroom, police found numerous guns and ammunition lying on the bed. However,

nothing was seized at that time. Based on this information and corroborating evidence from an informant, the police subsequently obtained a search warrant and seized numerous guns and ammunition. McAlpine then filed a motion to suppress arguing that the initial warrantless search of his trailer violated the Fourth Amendment and that the subsequent warrant was insufficient because it was based on the prior illegal search. *Id.* at 1462–63.

The United States in *McAlpine* argued that the initial search was valid because Hale consented to it. The Tenth Circuit concluded that Hale had common authority over the trailer and therefore had the power to consent to a search of the trailer. The Tenth Circuit looked to the fact that Hale had resided at the trailer for two months, she slept in the back bedroom, and had personal possessions throughout the trailer. *Id.* at 1464. Although McAlpine argued that Hale was a kidnap victim and therefore did not have sufficient authority over his property to give effective consent, the Tenth Circuit rejected this argument. Rather, the Tenth Circuit focused on the relationship between the consenter and the property, not the consenter and the defendant. Indeed, the *McAlpine* court noted that Hale is

> a member of that class of victims who actually cohabitate with their abusers and who are not free to leave for fear of their physical or psychological well-being. Because these crime victims both sleep and carry out daily activities in the same residence with the perpetrator, they are entitled to give consent to a search of the residence in their own right.

*Id.* at 1465.

We find the case *sub judice* distinguishable from *McAlpine* in several ways. First, the record indicates that as far as the police knew, Skinner had only been present at the apartment for four days. Second, the government has not produced evidence that Skinner had any personal possessions in the apartment. Third, in *McAlpine,* Hale did not leave the trailer, although she was physically able to leave. However, in the case *sub judice,* Skinner did not even have the ability to leave. There was no impediment to Hale's

admitting persons to the trailer. Here, it was apparent to all that Skinner had no ability on her own to admit persons to the apartment let alone authority. Also, the guns in *McAlpine* were found in plain view on the bed. In this case, the guns were found inside a closet. For these reasons, we do not find *McAlpine* persuasive and conclude that a reasonable officer would not believe that Skinner had common authority over the defendant's closet.

The United States argues that the firearms were seized as a result of Skinner's private search and therefore no constitutional violation occurred. When Skinner searched the closet in order to find the location of the guns, the United States correctly asserts that her actions constituted a private search and no constitutional violation occurred as a result of her actions. However, the defendant argues that the *officers'* entry and seizure of the guns constituted an unconstitutional violation, not Skinner's. Indeed, if Skinner had retrieved the weapons herself and then turned them over to the police, an entirely private search and *seizure* would have occurred and the defendant would have no cause to complain. *See United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *United States v. Lambert,* 771 F.2d 83 (6th Cir.), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 577 (1985). However, the facts indicate that Skinner disclosed the location of the guns and then the *officers* seized the weapons and ammunition.

## B. Exigent Circumstances

■ The defendant argues that the District Court also erred in concluding that exigent circumstances justified the warrantless entry of the apartment to free Skinner and the warrantless seizure of the firearms from his closet. The United States counters that exigent circumstances justified the warrantless entry into the apartment to secure the safety of the victim and the warrantless seizure of the guns was justified to avoid the destruction of evidence and to avoid a risk of danger to police or others.

■ It is well-settled that "[a]bsent exigent circumstances, police officers may not

enter an individual's home or lodging to effect a warrantless arrest or search." *United States v. Morgan,* 743 F.2d 1158, 1161 (6th Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985) (citing *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980)). The Supreme Court has recognized four situations satisfying the exigent circumstances exception: hot pursuit of a fleeing felon, *United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–10, 49 L.Ed.2d 300 (1976); (2) imminent destruction of evidence, *Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966); (3) need to prevent a suspect's escape; and (4) risk of danger to police or others, *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).

We review *de novo* the "[d]istrict [c]ourt's legal conclusions with respect to the issue of exigency; however, the court's factual findings on the existence of exigent circumstances will be disturbed only if they are clearly erroneous." *United States v. Johnson,* 9 F.3d 506, 508 (6th Cir.1993).

The officers here responded to a call that Skinner was being held in an apartment against her will. Upon arrival, Skinner, 14, answered the door and told officers that the defendant had locked her in the apartment and would not release her. Skinner was alone, but locked in the apartment behind an armored gate. The police used a neighbor's tools to remove the lock from the armored gate and free Skinner. Under these circumstances, the police officers were clearly justified in the limited warrantless entry to free Skinner. This warrantless entry was justified by the need to free a victim who had been held against her will and sexually assaulted. *See Olson,* 495 U.S. at 100, 110 S.Ct. at 1690; *Mincey v. Arizona,* 437 U.S. 385, 392–93, 98 S.Ct. 2408, 2413–14, 57 L.Ed.2d 290 (1978).

However, we must determine whether exigent circumstances existed which would justify the officers' subsequent seizure of the firearms from the closet. The District Court concluded that exigent circumstances existed stating,

the seizure of the three guns ... took place, of course, after the victim was freed, but I think I must conclude that exigent circumstances continued and justified the search. The entry was justified, as the officers were responding to an emergency situation, and I think a security sweep of the area was justified. She reported to them that there were guns in the house. She reported that the kidnapper or the holder, the person who was holding her, said that he would use those guns against her and her family if she tried to escape. The search was a limited one and allowed the responding officers to gain control over all weapons which might endanger them and the public. I think it is—the very significant thing is the fact she communicated to them that the Defendant had said if she escaped, he would use—he would get after her and her family and use the guns. So I think exigent circumstances existed for the search and seizure of the guns.

We conclude no exigent circumstances existed to justify the warrantless seizure of the guns. Once the police had freed Angela Skinner, the police had ample time to secure the premises and to obtain a search warrant. There is no evidence that they found the guns in a security sweep of the apartment or that they even made a security sweep. The mere presence of firearms does not create exigent circumstances. Because we conclude that Skinner did not have common authority over the closet and no exigent circumstances existed to justify the search, we reverse the District Court's denial of the defendant's motion to suppress.

### IV.

The defendant also challenges the District Court's denial of his motion to suppress the ammunition obtained as a result of the February 1 search by the ATF. The District Court denied this motion to suppress for two reasons. First, the District Court concluded that the January 23 search was valid and therefore the search warrant was supported by probable cause. Additionally, the District Court concluded that even if the January 23 seizure was invalid, the evidence recovered in the February 1 search was not

subject to suppression, based on the good faith exception to the exclusionary rule announced in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Because we have already concluded that the seizure of the firearms on January 23 was invalid, we only need to determine if the District Court erred in concluding that the evidence was not subject to suppression because of the good faith exception. We review *de novo* a District Court's determination that officers reasonably and in good faith relied on the February search warrant as required by *Leon.*

In *Leon,* the Supreme Court held that the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 104 S.Ct. at 3411. The defendant argues that the *Leon* good-faith exception does not apply because the underlying affidavit "d[id] not 'provide the magistrate with a substantial basis for determining the existence of probable cause,'" *id.* at 915, 104 S.Ct. at 3416 (quoting *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)), or in other words, "the warrant application was supported by [nothing] more than a 'bare bones' affidavit." *Id.* 468 U.S. at 915, 104 S.Ct. at 3416.

We find the defendant's argument unpersuasive. The affidavit recited that guns were seized at the defendant's apartment on January 23, that defendant was a felon, and that two informants had informed the police that the defendant stored guns in his apartment. Additionally, these informants identified specific places where they had seen guns in the defendant's apartment and claimed they had been present when the defendant had sold crack to others on occasions during the past three weeks. We conclude that this is not one of those rare cases in which the officer should have known that the search was illegal despite the magistrate's authorization.

Thus, the District Court did not err in concluding that the ammunition recovered as a result of the ATF search warrant should not be suppressed because the ATF officers reasonably and in good faith relied on the February 1 search warrant.

Although we agree that the ammunition seized by the ATF should not be suppressed, the charge of felon unlawfully in possession of ammunition was dismissed as part of the plea agreement. The only evidence relevant to the defendant's guilty plea for felon unlawfully in possession of a firearm is the three guns seized by Detroit police. Thus, although admissible, the ammunition is irrelevant to the defendant's guilty plea.

**V.**

Despite defendant's objection, the District Court ruled that defendant was an armed career criminal under 18 U.S.C. § 924(e) and therefore imposed the mandatory minimum of fifteen years.[2] Defendant argues that the career offender characterization is erroneous because his predicate state convictions are invalid. Specifically, the defendant argues that his predicate state convictions for breaking and entering were based on guilty pleas which were not entered knowingly and voluntarily.

■ Our recent en banc decision in *McGlocklin* establishes that a defendant retains the right to challenge predicate state convictions which are used to enhance his sentence under the United States Sentencing Guidelines. *United States v. McGlocklin,* 8 F.3d 1037 (6th Cir.1993) (en banc). However, the validity of the state conviction must be determined solely as a matter of federal law. *Id.*

■ A guilty plea acts as a waiver of various constitutional rights and therefore must be entered intelligently and voluntarily. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct.

---

**2.** 18 U.S.C. § 924(e) states, "[i]n the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony ... such person shall be fined not more than $25,000 and imprisoned not less than fifteen years...."

18 U.S.C. § 924(e)(2)(B) states,

the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that ... (ii) is burglary....

1709, 23 L.Ed.2d 274 (1969). "A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charge against him." *McGlocklin,* 8 F.3d at 1047.

■ In June, 1983, defendant pled guilty to two breaking and entering offenses, used as predicates to the instant fifteen-year enhancement under the armed career criminal act.[3] The defendant argues that the following statements illustrate that his pleas were not entered knowingly and voluntarily.

> Court: Before I proceed any further, Mr. Johnson, I received a letter from you under the date of 5/25/83 that was directed to Judge Halfaway (phonetic). I assume that was the Judge that held your Preliminary Examination except the file shows that it is Judge Rufus Griffin.
>
> . . . .
>
> The letter was communicated to me since I am the Arraignment on the Information Judge. Mr. Johnson, in this letter, you make a number of allegations. Are you listening to me?
>
> Defendant: Yes.
>
> Court: And, one thing you said is I don't understand what is going on because my attorney will not explain anything to me about this case. Is that what you said?
>
> Defendant: Yes. That is what I said.
>
> Court: Do you have any questions now regarding what is going on?
>
> Defendant: No, Sir.
>
> Court: Has your attorney explained everything to you in terms of what is going on?
>
> Defendant: Yes, sir.

Because the defendant communicated in a letter that he did not understand the proceedings and was only educated through the tenth grade, the defendant now contends that the state court should have inquired into the defendant's understanding further by requiring the defendant to articulate his knowledge and understanding of the proceeding and its consequences. Thus, the defendant argues

that the state court's failure to make a determination that the pleas were knowing and voluntary invalidates these convictions for purposes of federal sentence enhancement.

We disagree. The state court judge asked the defendant if his lawyer had explained the proceeding and if he understood what was going on. Defendant responded in the affirmative. While the defendant's letter to the state court raises a question of whether he understood the nature of the proceedings, the state court's subsequent questioning of the defendant was sufficient to establish that the defendant knowingly and voluntarily pled guilty and he was aware of his constitutional rights.

## VI.

■ Finally, the defendant argues that his fifteen-year mandatory minimum sentence as an armed career criminal is grossly disproportionate to the status offense of felon in possession of a firearm in light of the totality of the circumstances and constitutes cruel and unusual punishment under the Eighth Amendment.

Defendant's prior convictions include two breaking and entering occupied dwelling convictions, one for attempted breaking and entering an occupied dwelling and one for attempted breaking and entering a business place. Defendant contends that the sentencing court's reliance on these convictions as violent felonies within the meaning of 18 U.S.C. §§ 924(e)(1) and 924(e)(2)(B) constitutes cruel and unusual punishment. Specifically, the defendant focuses on the staleness of the 1975 and 1976 convictions and the fact that all the convictions were for non-violent, unarmed property offenses. Furthermore, the transcripts of the plea proceedings for the 1975 and 1976 convictions have been destroyed following 15 years. Thus, defendant asserts that his counsel was unable to review the transcripts to determine if the defendant's pleas were entered knowingly and voluntarily.

---

**3.** Johnson was sentenced on both a 1981 and a 1983 conviction for breaking and entering an occupied dwelling at the same proceeding be-

cause he failed to appear for sentencing on December 7, 1981.

From these circumstances, the defendant argues that the imposition of the mandatory minimum sentence of fifteen years for an armed career criminal is grossly disproportionate to the status offense of felon unlawfully in possession of firearms.

We disagree. First, both attempted breaking and entering and breaking and entering an occupied dwelling constitute burglary under 18 U.S.C. § 924(e)(2)(B)(ii) of the Armed Career Criminal Act. *See United States v. Fish,* 928 F.2d 185 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991); *United States v. Lane,* 909 F.2d 895 (6th Cir.1990), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 977, 112 L.Ed.2d 1062 (1991). Thus, the defendant's argument that his prior convictions were unarmed, nonviolent felonies has no merit. Second, the Supreme Court has held that the mere unavailability of transcripts of the defendant's guilty pleas do not prohibit the use of his prior convictions for sentence enhancement, even when the question is waiver of constitutional rights. *See Parke v. Raley,* —— U.S. ——, ——–——, 113 S.Ct. 517, 523–24, 121 L.Ed.2d 391 (1992). Thus, we conclude that the defendant's four prior violent felonies render him an armed career criminal under 18 U.S.C. § 924(e) and he was properly sentenced as such. Under the totality of the circumstances, the fifteen-year sentence does not constitute cruel and unusual punishment. The defendant's sentence is not extreme, nor is it grossly disproportionate to the crimes that earned it for him. *See United States v. Warren,* 973 F.2d 1304 (6th Cir.1992).

## VII.

■ The dissent's argument that defendant forfeited his expectation of privacy by making his apartment a prison seems to be foreclosed by *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). There the Court held that Arizona's "murder scene exception" violated the Constitution. Although recognizing that officers may make warrantless entries when they reasonably believe that a person within a home is in need of immediate aid and that they may make a prompt warrantless search of the area of a homicide to see if other victims, or a killer, are still on the premises and seize evidence in plain view, the Court held they cannot search the area unless one of the above or other exigent circumstances exist. Here, there is no indication that anyone else was on the premises, that evidence would be lost, destroyed or removed, or that the guns posed a danger before a search warrant could be secured. If people do not forfeit their expectation of privacy when they commit a homicide on their premises, it is hard to see why they do because they restrained the victim there.

Nor is this a case for application of the inevitable discovery doctrine or independent source doctrine. In the independent source cases, a subsequent search is valid if there is an independent source for the necessary probable cause. For example, if after seeing the guns the police had obtained a warrant based on Angela Skinner's statement that the guns were there and were used to threaten her and her family, that source was independent of the illegal search here and a warrant based on that information would be valid. Certainly, the police could have obtained a warrant based on Skinner's statements.

In the inevitable discovery cases, evidence unlawfully obtained is admissible if the evidence would have been inevitably discovered by lawful means. However, to hold that simply because the police could have obtained a warrant, it was therefore inevitable that they would have done so would mean that there is inevitable discovery and no warrant requirement whenever there is probable cause.

As the Ninth Circuit in *United States v. Echegoyen,* 799 F.2d 1271, 1280 n. 7 (9th Cir.1986), stated: "[T]o excuse the failure to obtain a warrant merely because the officers had probable cause and could have inevitably obtained a warrant would completely obviate the warrant requirement of the fourth amendment."

The Seventh Circuit seems to have adopted the position the dissent argues for in *United States v. Buchanan,* 910 F.2d 1571, 1573 (7th Cir.1990), where it held:

The issue in this appeal is whether the cocaine discovered when Buchanan's clothes were being packed would inevitably have been discovered through a search pursuant to a proper warrant. *Nix v. Williams*, 467 U.S. 431, 443–45, 104 S.Ct. 2501, 2508–10, 81 L.Ed.2d 377 (1984). To answer this question, we must answer two subsidiary questions: first, would the police have inevitably sought a search warrant for the room, and second, would a neutral magistrate have issued such a warrant. Because we answer both those questions in the affirmative, we hold that the motion to suppress evidence was properly denied, and we affirm the conviction.

We are unwilling to adopt such a radical departure from the Fourth Amendment warrant requirement precedent. *But see Akhil Reed Amar, Fourth Amendment First Principles,* 107 Harv.L.Rev. 757 (1994).

Nor does this case fit *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), since there was no other independent line of investigation or compelling facts illustrating that the guns would have inevitably been discovered. *See United States v. Boatwright,* 822 F.2d 862, 864 (9th Cir.1987) ("There will be instances where, based on the historical facts, inevitability is demonstrated in such a compelling way that operation of the exclusionary rule is a mechanical and entirely unrealistic bar, preventing the trier of fact from learning what would have come to light in any case. In such cases, the inevitable discovery doctrine will permit introduction of the evidence, whether or not two independent investigations were in progress."). For example, if the circumstances are such that the evidence would have been found in any inventory search that inevitably followed seizure of a car, the evidence could be introduced under *Nix.*

### VIII.

For the reasons stated, defendant's conviction on his conditional plea is **REVERSED** and the case is **REMANDED** to the District Court for further proceedings in accordance with this decision.

SUHRHEINRICH, Circuit Judge, dissenting.

The majority reverses defendant's conviction and remands this case for further proceedings. Because I do not believe that defendant's Fourth Amendment rights were violated, and because—even assuming a constitutional violation—I do not believe that the exclusionary rule should apply, I respectfully dissent.

### I.

Officers responded to defendant's residence pursuant to a radio call to the effect that a young girl was being held in the apartment against her will. When they arrived, they found the victim trapped inside the apartment by a locked, armored gate. The officers summoned their supervisor to the scene and he authorized a forced entry. Once freed, the victim told the officers that the defendant had raped her and threatened to shoot her or her family if she tried to escape. The victim directed the officers to the guns and the officers seized them. They did not look anywhere other than where the girl directed and they did not take anything other than the guns the girl had described previously.

I would hold that, when defendant converted his apartment from a home to a prison, he forfeited whatever reasonable expectation of privacy he had. For the Fourth Amendment to apply, the Supreme Court has recognized that the defendant must have suffered an invasion not only of a subjectively held expectation of privacy, but an expectation of privacy which "society is prepared to recognize as 'reasonable.'" *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

Here, unlike most crimes in which a defendant's home is merely the *location* of the crime, the defendant converted his home into the very *instrumentality* of his crime. One cannot hold a person against her will unless he has a trap in which to hold her. Thus, I conclude that once the police broke into the defendant's make-shift jail and freed his captive, they were free to seize any means he had employed to hold her against her will.

Though I believe that such a rule is justified, there is a narrower ground for holding that no Fourth Amendment violation occurred in this case. In *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), Justice Scalia, writing for the Court, addressed (albeit in dicta) the precise situation in this case. In *Hicks*, officers made a warrantless entry into the defendant's apartment; an entry justified by exigent circumstances. *Id.* at 324, 107 S.Ct. at 1152. Once inside, an officer noticed "suspicious" stereo equipment and moved it away from the wall to see the serial numbers. By moving the equipment, the Court held, the officer had conducted a search; a search beyond the scope of the exigencies which justified his warrantless entry. *Id.* at 324–25, 107 S.Ct. at 1152–53. The Court held that the evidence must be excluded because, without the information gained through this unlawful search, the police lacked the probable cause necessary to seize the equipment under the "plain view" doctrine. *Id.* at 326–27, 107 S.Ct. at 1153–54.[1]

In *Hicks*, Justice Powell asked in dissent, as I do here, "what [the officer] should have done in these circumstances." *Id.* at 332, 107 S.Ct. at 1156 (Powell, J., dissenting). Justice Scalia's response, I propose, should control this case:

The answer depends, of course, upon whether [the officer] had probable cause to conduct a search, a question that was not preserved in this case. If he had, then he *should have done precisely what he did* [that is, go ahead and search].

*Id.* at 329, 107 S.Ct. at 1155 (emphasis added). Justice Scalia's response indicates that once entry into the home has been effected legally, the police need only probable cause to conduct a search outside the scope of the justification for the entry; no further "warrant exception" is needed. Neither the concurring nor dissenting Justices in *Hicks* disputed this underlying assumption.

In this case, it is clear that the officer's warrantless entry into the apartment was justified by exigent circumstances. It is also clear that the search of the closet exceeded the scope of this initial justification. Using the analysis underlying *Hicks*, however, the officers needed only probable cause to search the closet, nothing more. The circumstances of the crime, the young girl's detailed description of the guns and their location, I believe, constituted probable cause to conduct the limited search and subsequent seizure which followed.[2]

## II.

Finally, even assuming a violation of defendant's Fourth Amendment rights in this case, I do not believe that the exclusionary rule should be applied. "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale [behind the exclusionary rule] has so little basis that the evidence should be received." *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984).[3] This "inevitable discovery" exception to the exclusionary rule is based upon the principle that, although the government should not be allowed to profit from its misdeeds, it should not be "put in a worse position simply because of

---

1. The "plain view" doctrine, of course, is not relevant to the present circumstances because the guns were found hidden in the defendant's bedroom closet.

2. Defendant's assertion that this case is controlled by *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), and *Thompson v. Louisiana*, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984), is unpersuasive. Here, the police seized only weapons and then only after the just-rescued victim described the guns and led the officers to where they were hidden. This is a far cry from the "general exploratory search for evidence of a crime," *Thompson*, 469 U.S. at 19, 105 S.Ct. at 410, which the Court ruled was illegal in those cases. *See Mincey*, 437 U.S. at 389, 98 S.Ct. at 2412 (police conducted four day, "exhaustive and intrusive" search, seizing 200 items); *Thompson*, 469 U.S. at 18–19, 105 S.Ct. at 409–10 ("2-hour general search remains a significant intrusion on petitioner's privacy").

3. The discovery of the victim's body in *Nix* was characterized by the Court as "inevitable" because, at precisely the moment that the police were conducting their illegal interrogation of the defendant, volunteer searchers were approaching the location where the defendant said the girl's body could be found. *Nix*, 467 U.S. at 448–49, 104 S.Ct. at 2511–12.

some earlier police error or misconduct." *Id.* at 443, 104 S.Ct. at 2508. In *Nix,* as should be the case here, application of the exclusionary rule was found to be improper because "exclusion of evidence that would inevitably have been discovered would also put the government in a worse position, because the police would have obtained that evidence if no misconduct had taken place." *Id.* at 444, 104 S.Ct. at 2509.

This court has recognized that illegally seized evidence may be used at trial if the government shows that there is a reasonable probability that, based upon information known to the officers *prior* to the illegal search, the evidence inevitably would have been discovered by lawful means. *United States v. Buchanan (David),* 904 F.2d 349, 356 (6th Cir.1990) (*citing United States v. Webb,* 796 F.2d 60, 62 (5th Cir.1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 894, 93 L.Ed.2d 846 (1987)).[4]

In the present case, it is indisputable that, immediately *prior* to the officers seizing defendant's weapons, the officers had sufficient probable cause upon which they *could* have obtained a warrant to search defendant's apartment for guns. I believe that there is sufficient evidence to support a finding that, but for their warrantless search, they *would* have obtained a warrant. Given the accuracy of the young girl's description and the fact that—by the defendant's own admission—the police could easily have secured the apartment for the short time needed to get a warrant, there can be no doubt that the guns would have been found. *See United States v. Buchanan (Collin),* 910 F.2d 1571, 1574 (7th Cir.1990) (defendant's cocaine inevitably would have been discovered because, had the officers not conducted their illegal search, they *would have* sought a warrant to search the hotel room—and that warrant *would have* issued—based upon their probable cause to believe that the defendant still had

the gun with which he committed a murder some thirty-seven days earlier).

Although the record before us is sketchy, I would hold that it contains facts sufficient to establish the inevitable discovery of defendant's weapons by lawful means. Even if not sufficient to conclude as a matter of law that the evidence is admissible, the record is certainly strong enough to warrant a remand in this case to enable the district court to make appropriate findings of fact on this issue; an issue it could not have reached given the nature of its findings concerning consent and exigency. *See United States v. Richardson,* 949 F.2d 851, 859 (6th Cir.1991) (remand for findings under the "inevitable discovery" doctrine necessary after reversing district court's conclusion that search was lawful).

### III.

Based upon the foregoing, I believe that there are two very clear grounds for holding that defendant's Fourth Amendment rights were not violated in this case. Additionally, even assuming a violation, I believe that application of the exclusionary rule is improper under the "inevitable discovery" doctrine. Therefore, I respectfully dissent.

---

4. In *Buchanan,* however, this court relied on *Webb* as authority for a requirement that the government also show that "the police were actively pursuing [an] alternate line of investigation prior to the misconduct." *Id.* at 356–57. This "alternate investigation" requirement, most-likely born of the facts of the *Nix* case, see, *supra* at

note 3, was roundly criticized in *United States v. Boatwright,* 822 F.2d 862, 864 (9th Cir.1987), and squarely rejected by the Supreme Court one year later. *See Murray v. United States,* 487 U.S. 533, 540 n. 2, 108 S.Ct. 2529, 2534–35 n. 2, 101 L.Ed.2d 472 (1988).