**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Arre KENNEDY, Defendant–Appellant.**

**No. 94–1985.**

United States Court of Appeals, Sixth Circuit.

Argued May 22, 1995.

Decided Aug. 7, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 25, 1995.

Jonathan Tukel (argued and briefed), Office of the U.S. Atty., Detroit, MI, for plaintiff–appellee.

Fred A. Schwartz (briefed), Adorno & Zeder, Miami, FL, Marcia J. Silvers (argued and briefed), Dunlap & Silvers, Miami, FL, for defendant–appellant.

Before: MILBURN and BATCHELDER, Circuit Judges; TODD,* District Judge.

TODD, District Judge.

Defendant appeals his conviction following a conditional plea of guilty to a charge of conspiracy to distribute and to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, the only issue is whether cocaine seized in a warrantless search of defendant's suitcase was admissible under the inevitable discovery exception to the exclusionary rule. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I.

### A.

On July 25, 1993, defendant Arre Kennedy flew from Detroit, Michigan, to Miami, Florida, on Northwest Airlines flight 991. Defendant checked two locked pieces of luggage, a blue suitcase and a black suitcase. North-

---

* The Honorable James D. Todd, United States District Judge for the Western District of Tennes-see, sitting by designation.

west mistakenly labeled defendant's suitcases with tags bearing the name of Wesley Kennedy, a Northwest passenger unrelated to defendant. As a result, defendant's suitcases were misrouted and sent to National Airport in Washington, D.C. At National Airport, Wesley Kennedy, who had flown from Detroit to Washington, discovered that his own bag was missing and reported the problem to Northwest employee, Deborah Hawkins–Garner. Hawkins–Garner showed defendant's two suitcases, each of which had a tag bearing the initials A–W–K, to Wesley Kennedy who informed her that the suitcases were not his.

Northwest's policy regarding lost luggage was to open the suitcase to check for identification and, if there was no identification, to inventory the contents. Pursuant to that policy, Hawkins–Garner decided to open the suitcases to see if they contained any identification. She was unable to open the black suitcase because it had a combination lock. However, she was able to open the blue suitcase since it had a lock that could be opened with a Northwest key. The blue suitcase contained $176,000, which was promptly reported to the Metropolitan Washington Airport Authority Police Department.

Officer Simon Mantel answered the call and was later joined by Sergeant Arthur Taplett. Sergeant Taplett was suspicious of the contents of the black suitcase because a strong odor of perfume was emanating from it. Because of a concern that the suitcase might contain explosives, Sergeant Taplett had it x-rayed, which revealed a number of dense, rectangular-shaped objects with an almost metallic appearance, although approximately one-fourth of the contents was indiscernible. Officer Mantel remained with the suitcases while Sergeant Taplett began making arrangements to move the suitcases to the airport police station.

At that point, Hawkins–Garner decided to go ahead and open the black suitcase. After receiving permission from her supervisor to open the bag, she obtained a hammer and a screwdriver and asked Officer Mantel to open it for her. He advised Sergeant Taplett on the radio that Hawkins–Garner had asked him to open the black suitcase and asked if

there was a problem with that. Sergeant Taplett replied that Officer Mantel could open the suitcase if Northwest wanted it opened. Officer Mantel then used the hammer and screwdriver to force open the lock on the suitcase. Inside were a number of rectangular-shaped packages wrapped in brown duct tape. Officer Mantel did not try to open the packages.

In response to an earlier phone call from another airport police sergeant, Special Agent Ed Curley of the Drug Enforcement Administration ("DEA") arrived. He suspected that the suitcase contained drugs based on the packaging and the presence of the perfume odor. Agents conducted a field test on the contents of one of the packages and established that it contained cocaine. It was determined that the suitcase contained 17 kilograms of cocaine and 77 grams of cocaine base.

Shortly thereafter, Northwest in Washington, D.C., was notified that defendant had arrived in Miami and was looking for his suitcases. DEA agents arranged for a controlled delivery of the suitcases to defendant. The next day, defendant and his son picked up the suitcases in Miami. As they were leaving, agents arrested Defendant after he admitted that the suitcases belonged to him. Defendant confessed that he had been trafficking drugs from Miami to Detroit for several months. A consensual search of defendant's home produced an additional $225,000 in cash.

## B.

On August 26, 1993, a federal grand jury returned a two-count indictment against defendant charging him with conspiracy to distribute and to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Defendant moved to suppress the cocaine seized from his black suitcase and all the evidence that resulted therefrom. The district court held an evidentiary hearing and denied the motion based on the inevitable discovery exception to the exclusionary rule.

On May 13, 1994, defendant entered a conditional plea of guilty to conspiracy to distribute cocaine, reserving his right to appeal the denial of his motion to suppress pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. The government agreed to dismiss the possession count at sentencing. On August 26, 1994, the district court sentenced defendant to the statutory mandatory minimum of 120 months imprisonment, five years of supervised release, a fine of $5000, and a special assessment of $50. The district court granted defendant bond pending appeal. This timely appeal followed.

## II.

■ Defendant contends that the district court erred in denying his motion to suppress because the government failed to establish that the cocaine inevitably would have been discovered by lawful means. "[T]his court reviews a district court's decision on a motion to suppress under two complementary standards." *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir.1993). "A district court's factual findings made in consideration of a motion to suppress evidence are to be upheld unless they are clearly erroneous. However, the district court's conclusions of law are subject to de novo review on appeal. The reviewing court is to review the evidence 'in the light most likely to support the district court's decision.'" *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir.) (citations omitted), *cert. denied*, — U.S. —, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992). Mixed questions of law and fact are reviewed de novo. *United States v. Clark*, 982 F.2d 965, 968 (6th Cir.1993). Because we believe the applicability of the inevitable discovery exception to this case is a mixed question, we shall review the district court's decision de novo. *See United States v. Boatwright*, 822 F.2d 862 (9th Cir.1987) (panel implicitly reviewed the application of the inevitable discovery doctrine de novo by its extensive review of the facts and the doctrine itself).

■ The exclusionary rule prohibits the admission of evidence seized in searches and seizures that are deemed unreasonable under the Fourth Amendment, as well as derivative evidence acquired as a result of an unlawful search. *Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). The inevitable discovery doctrine, an exception to the exclusionary rule, allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means. *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). In approving the inevitable discovery exception, the Supreme Court reasoned that "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received." *Id.*

> Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place. However, if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings. In that situation the State has gained no advantage at trial and the defendant has suffered no prejudice. Indeed, suppression of the evidence would operate to undermine the adversary system by putting the State in a worse position than it would have occupied without any police misconduct.

*Id.* at 447, 104 S.Ct. at 2511. Therefore, when "the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." *Id.* at 448, 104 S.Ct. at 2511.

■ For the inevitable discovery exception to apply, it must be demonstrated that the evidence inevitably would have been acquired through lawful means had the government misconduct not occurred. *Id.* at 444, 104 S.Ct. at 2509; *see Murray v. United States*, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101

L.Ed.2d 472 (1988). Proof of inevitable discovery "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings." *Nix*, 467 U.S. at 444 n. 5, 104 S.Ct. at 2509 n. 5. "The exception requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." *United States v. Eng*, 971 F.2d 854, 861 (2d Cir. 1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 693, 126 L.Ed.2d 660 (1994). With these general principles in mind, we turn to defendant's arguments on appeal.

■ Defendant acknowledges that the inevitable discovery exception applies when, at the time of the unlawful search, there was a separate independent line of investigation underway or there are compelling facts indicating that the disputed evidence would have inevitably been discovered, such as proof that the evidence would have been found in an inventory search that would inevitably follow seizure of a car. *See United States v. Johnson*, 22 F.3d 674, 684 (6th Cir.1994) and *United States v. Buchanan*, 904 F.2d 349, 356–57 (6th Cir.1990). Defendant argues that his motion to suppress should have been granted because, at the time of the search, there was no independent investigation underway nor are there historical facts demonstrating that a private search was inevitable.[1]

Whether an independent line of investigation is required for the inevitable discovery exception to apply is a question that has divided the circuits. Some circuits have refused to apply the inevitable discovery exception absent an independent line of investigation. *See, e.g., United States v. Owens*, 782 F.2d 146, 152–53 (10th Cir.1986) (refusing to apply the inevitable discovery exception because at the time the evidence was illegally discovered, there was no independent, untainted investigation that inevitably would have uncovered the same evidence); *United States v. Cherry*, 759 F.2d 1196, 1205–06 (5th

Cir.1985) (holding that "[i]n order for the [inevitable discovery] exception to apply, the prosecution must demonstrate both a reasonable possibility that the evidence would have been discovered in the absence of police misconduct and that the government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation"), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987); *United States v. Satterfield,* 743 F.2d 827, 846 (11th Cir.1984) (stating that "if evidence is obtained by illegal conduct, the illegality can be cured only if the police possessed and were pursuing a lawful means of discovery at the time the illegality occurred"), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985).

Other circuits, however, have rejected this requirement. *See, e.g., United States v. Thomas,* 955 F.2d 207, 210–11 (4th Cir.1992) (rejecting the requirement that there be an alternative line of investigation for the inevitable discovery exception to apply), *cert. denied,* —— U.S. ——, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994); *United States v. Ramirez–Sandoval,* 872 F.2d 1392, 1399 (9th Cir.1989) (holding that the inevitable discovery exception does not require that the tainted evidence be obtained from a previously initiated, independent investigation); *United States v. Fitzharris,* 633 F.2d 416, 421 (5th Cir.1980) (allowing the admission of evidence that was initially obtained through an illegal search when a valid warrant was subsequently obtained on the ground that the evidence inevitably would have been discovered under the warrant), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2325, 68 L.Ed.2d 847 (1981). Although this court has considered this issue at least twice, it has never addressed it directly. *See United States v. Johnson,* 22 F.3d 674, 684 (6th Cir.1994) and *United States v. Buchanan,* 904 F.2d 349, 356–57 (6th Cir.1990).

*Buchanan* involved the admissibility of evidence seized by drug enforcement agents during a warrantless search of the defendant's residence. *Buchanan,* 904 F.2d at 350. The government, relying on *United*

---

1. The government has conceded that the search which actually occurred was not a private search pursuant to this court's holding in *United States*

*v. Grant,* 920 F.2d 376, 388 (6th Cir.1990). Appellee's Brief at 11, n. 3.

*States v. Webb,* 796 F.2d 60, 62 (5th Cir. 1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 894, 93 L.Ed.2d 846 (1987), argued that the inevitable discovery exception permits admission of the evidence if the government can satisfy the following three-part test:

(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct; (2) that the police possessed the leads making the discovery inevitable at the time of the misconduct; and (3) that the police were actively pursuing [an] alternate line of investigation prior to the misconduct.

*Id.* at 356.

Because the agents were not pursuing an alternate line of investigation, this court rejected the government's claim that the three-part test was satisfied. "[P]rior to initiating the warrant application for the [defendant's] residence, the agents made an illegal entry into the home which 'tainted the only ... investigation that was ongoing.'" *Id.* at 357 (quoting *United States v. Owens,* 782 F.2d 146, 152 (10th Cir.1986)). *Buchanan* did not adopt the three-part test advanced by the government as a necessary requirement to the application of the inevitable discovery exception. Instead, it simply rejected the government's argument that the inevitable discovery exception permitted admission of the evidence under the three-part test. *Id.* at 356–57.[2]

*United States v. Johnson,* 22 F.3d 674 (6th Cir.1994), clarifies the point. *Johnson,* which involved the admissibility of guns seized by police during a warrantless search of the defendant's apartment, did not fit *Nix* because "there was no other independent line of investigation or compelling facts illustrating that the guns would have inevitably been discovered." *Id.* at 684. This court quoted with approval *United States v. Boatwright,* 822 F.2d 862 (9th Cir.1987), which held that the inevitable discovery exception does not require that the tainted evidence be obtained from a previously initiated, independent investigation:

"There will be instances where, based on the historical facts, inevitability is demonstrated in such a compelling way that operation of the exclusionary rule is a mechanical and entirely unrealistic bar, preventing the trier of fact from learning what would have come to light in any case. In such cases, the inevitable discovery doctrine will permit introduction of the evidence whether or not two independent investigations were in progress."

*Johnson,* 22 F.3d at 684 (quoting *Boatwright,* 822 F.2d at 864).

These cases lead to the conclusion that the inevitable discovery exception to the exclusionary rule applies when the government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered. Therefore, we hold that an alternate, independent line of investigation is not required for the inevitable dis-

---

**2.** In *Buchanan,* this court relied in part on the reasoning in *United States v. Griffin,* 502 F.2d 959, 961 (6th Cir.) (per curiam), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974), which held that "police who believe they have probable cause to search cannot enter a home without a warrant merely because they plan subsequently to get one." *Griffin,* 502 F.2d at 961. In *Griffin* the inevitable discovery exception was not applied because the police intentionally took a shortcut in an attempt to bypass the Fourth Amendment warrant requirement—in effect, the police conducted an illegal search to determine whether it would be worthwhile to obtain a search warrant. *Id.*

Under *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), the holding in *Griffin* must be narrowly applied. *Murray* held that the Fourth Amendment does not require suppression of evidence initially discovered during a police officer's illegal search if that evidence is also discovered during a later search pursuant to a valid warrant that was obtained independently of the illegal search. Therefore, although we adhere to the position that intentional shortcuts to the warrant requirement cannot be tolerated, we limit its application under *Murray* to facts similar to those in *Griffin.* *See United States v. Straughter,* 950 F.2d 1223, 1231 (6th Cir.1991) (recognizing that "the Fourth Amendment does not require the suppression of evidence initially discovered during an illegal entry if that evidence is seized during a later search pursuant to a warrant that is not based on evidence obtained during the illegal entry"), *cert. denied,* 503 U.S. 976, 112 S.Ct. 1601, 118 L.Ed.2d 315 (1992).

covery exception to apply. We now turn to the facts of this case.

 It is undisputed that there was no independent line of investigation underway at the time of the warrantless search of the black suitcase by the airport police. Therefore, we must determine whether the district court erred in finding that there were compelling facts establishing that the disputed evidence inevitably would have been discovered in any event.

In denying the motion to suppress, the district court stated:

> The police misconduct in this case was the warrantless search of the black suitcase, thus the Court must consider what would have happened had the illegal search not occurred. Had the police acted lawfully, once the bag was seized and it was determined that it posed no danger of exploding, they would have sought a search warrant. The government concedes that under the facts of this case, it is unlikely that a search warrant would have been issued ... If the police had been unable to secure a warrant, they would have been required to return the suitcase to Northwest Airlines unopened. Northwest would then have opened the suitcase, pursuant to its lost luggage policy, in an effort to locate its owner.

J.A. 21. The district court then determined that "[t]he proper application of the inevitable discovery rule can only lead to the conclusion that, absent the illegal retention ... of the suitcase, the airport police would have returned the suitcase to Northwest, which would have searched it." J.A. 22. The court concluded that, because an identification search by Northwest would have been a search by a private entity, the Fourth Amendment would not have been violated. Therefore, the district court ruled that the cocaine discovered in the search and the evidence derived therefrom were admissible under the inevitable discovery exception.

In *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1399 (9th Cir.1989), the Ninth Circuit held that the government can meet its burden of showing that the tainted evidence inevitably would have been discovered through lawful means "by establishing that, by following routine procedures, the police would inevitably have uncovered the evidence." In that case, the court cited two cases involving evidence that inevitably would have been discovered pursuant to a standard procedure. *See United States v. Martinez-Gallegos*, 807 F.2d 868, 870 (9th Cir.1987) (information inevitably would have been obtained as next step by consulting defendant's immigration file even absent unwarned statements); *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir.1986) (evidence inevitably would have been discovered by following routine booking procedure and inventory). The Second, Fourth, and Fifth Circuits agree. *See United States v. Seals*, 987 F.2d 1102, 1107–08 (5th Cir.) (applying the inevitable discovery exception to evidence obtained in the illegal search of a vehicle when the officer had already decided to impound the vehicle and police department inventory procedures required the inventory of impounded vehicles), *cert. denied*, —— U.S. ——, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993); *United States v. Perea*, 986 F.2d 633, 644 (2d Cir.1993) (holding that the contents of a bag that was illegally searched would be admissible if the items inevitably would have been discovered during a valid inventory search); *United States v. George*, 971 F.2d 1113, 1121–22 (4th Cir.1992) (concluding that evidence found during a search incident to an invalid arrest would be admissible if it inevitably would have been discovered pursuant to a standard inventory search of a lawfully impounded vehicle).

We believe that the existence of a routine procedure such as Northwest's policy regarding lost luggage satisfies the requirement that there be compelling facts illustrating that the disputed evidence inevitably would have been discovered.

Prior to the intervention of the airport police, Hawkins–Garner had already decided to open the suitcases pursuant to Northwest's policy of opening lost luggage. Even after the airport police arrived, Hawkins–Garner still thought she should open the suitcase because she considered it to be in Northwest's custody. Hawkins–Garner testified that she would have opened the suitcase herself or had another employee to do so if Officer Mantel had not opened it for her. Therefore, it is clear that, pursuant to Northwest's lost luggage policy, Hawkins–Garner

would have opened the black suitcase and discovered the evidence in a private search had the airport police not become involved. Because a private search was inevitable, the cocaine is admissible pursuant to the inevitable discovery exception to the exclusionary rule.

Our conclusion is bolstered by *United States v. Hernandez–Cano*, 808 F.2d 779 (11th Cir.), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3194, 96 L.Ed.2d 682 (1987), in which an x-ray of the defendant's carry-on bag revealed a large mass. The defendant voluntarily opened the bag wide enough for an airport security officer to observe a large bundle that appeared to be a white powder which could have been an explosive. When the defendant refused to permit further inspection, he was told that he could not pass through the security checkpoint. *Id.* at 780. The defendant then transferred the bundle from his carry-on bag to his checked luggage. As he passed the airport security officer, he stated that he had thrown away the bundle.

When Fleck, a ticket agent supervisor, was made aware of what had transpired, she became concerned about the safety of the aircraft. She went to the baggage area accompanied by Singleton, a police officer. *Id.* at 781. Fleck opened one of the defendant's suitcases and began to search it by reaching in and feeling around its edges. Singleton, who had been looking over Fleck's shoulder, reached inside the suitcase and pulled out a large bundle which was later determined to be cocaine. *Id.* at 782. Fleck testified that had Singleton not reached his hand into the suitcase, it was entirely reasonable to assume that she would have completed her search and discovered the cocaine. *Id.* The district court suppressed the cocaine, but the Eleventh Circuit reversed on the basis of the inevitable discovery exception. The court reasoned that, had Singleton not intervened in the search, Fleck inevitably would have discovered the cocaine. *Id.* at 783.

This case is factually analogous to *Hernandez–Cano*. Here, Hawkins–Garner undertook a private search of the two suitcases for purposes entirely independent of the airport police. As in *Hernandez–Cano*, the private search was interrupted by police involvement. If the police had not become involved, Hawkins–Garner would have completed the private search which would have revealed the cocaine. Therefore, as in *Hernandez–Cano*, application of the inevitable discovery exception is appropriate.

Defendant argues that the police would not have relinquished control of the suitcase to Northwest, and, thus, Hawkins–Garner would not have had the opportunity to open the suitcase. Assuming *arguendo* that defendant is correct and the airport police and/or DEA had kept the suitcase, the result would have been the same. The law enforcement officers would have applied for a search warrant. If a warrant had issued, the officers would have conducted a search pursuant to that warrant; if a warrant had not issued, Northwest would have conducted a private search after the suitcase had been returned. In either case, a search inevitably would have been conducted, and the cocaine would have been discovered.

For the foregoing reasons, we agree that the inevitable discovery exception to the exclusionary rule was properly applied by the district court in denying defendant's motion to suppress. The judgment of the district court is AFFIRMED.