NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0817n.06
Filed: October 5, 2005

No. 04-2433

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JERMAINE DEMETRIS MCGLOWN, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: NORRIS and DAUGHTREY, Circuit Judges; MARBLEY, District Judge.*

ALGENON L. MARBLEY, District Court Judge. Defendant Jermaine McGlown appeals from a jury verdict that found him guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Prior to trial, Defendant pled guilty to the second count of the indictment: simple possession of cocaine, in violation of 21 U.S.C. § 844(a). On appeal, he designates two assignments of error: 1) the district court erred in denying his Motion to Suppress cocaine seized based upon the "plain feel" doctrine; and 2) the district court erred when it denied Defendant's Motion in Limine to exclude evidence of cocaine possession, in his trial on the felon in possession count. Jurisdiction is proper under 28 U.S.C. § 1291. For the following reasons, we **AFFIRM** the district court's decisions to deny Defendant's Motion to Suppress and Motion in Limine.

* The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

## BACKGROUND

This case arises from the surveillance of Beaver's Sports Lounge in Flint, Michigan by police officers Cedric Kendall and Roy Villarreal. At the suppression hearing that the district court conducted on March 11, 2004, Kendall testified that during the early morning hours of July 19, 2003, he and Villarreal were conducting surveillance of the lounge's parking lot from their squad car. According to Kendall's testimony, at approximately 2:20 a.m. the officers heard "six loud shots that sounded like they were real close." Kendall exited the vehicle and approached two groups of at least four or five people who appeared to be arguing with each other. At this point, Kendall testified that he "noticed a subject wearing a white T-shirt and blue jeans who was later identified as [Defendant] appeared to be placing something black inside of his waistband and turning away toward – away from me around the vehicle." Kendall ordered Defendant to stop but Defendant did not comply with that order. Defendant walked behind a black Oldsmobile Bravada parked nearby and Kendall "noticed he bent down as though he was placing something on the ground and then stepped to the rear passenger side of that Oldsmobile Bravada." When Defendant bent over, he was approximately 30 to 35 feet from the officers, and they could not see precisely what he placed on the ground. Because of the gunshots that Kendall had heard and the nature of the item he saw Defendant place in his waistband, Kendall thought that "[Defendant] may have been in possession of a weapon."

In the meantime, Villarreal, who had driven their car to a new location, parked and approached his partner. At Kendall's direction, Villarreal checked Defendant for a weapon:

> He [Villarreal] walked directly over to [Defendant] and took control of him, proceeded to do a pat down, and this was during the time that I was telling these other few guys to clear the lot. When I finished and walked over to the vehicle that Officer Villarreal was patting down [Defendant], Officer Villarreal advised me that

he had found cocaine also, powder cocaine.

In response, Kendall inspected the Bravada and he found a black Norinco nine millimeter handgun on the ground behind the driver's side rear tire. Kendall and his partner took photographs of the gun's position on the ground before placing it in an evidence bag. Upon inspecting the gun, Kendall noticed that it contained two live rounds of ammunition in the magazine and one in the chamber. The officers also seized six empty nine millimeter casings from the parking lot. Thereafter, Defendant was placed under arrest and taken to the Flint Police Department.

Later in the day, after informing him of his *Miranda* rights, Kendall interviewed Defendant. When asked about the gun, according to Kendall's testimony, Defendant allegedly responded, "[W]hat justice would it do him to admit to the gun." Initially, however, Defendant claimed that he did not have a gun and that he was in the parking lot "just arguing."

On cross-examination, Kendall conceded that there were more than 30 people in the parking lot that night; that the lounge had just closed and patrons were leaving "en masse"; and that there was quite a bit of background noise in the parking lot. When defense counsel asked Kendall if he was sure Defendant had heard his instruction to stop, Kendall replied, "[H]e looked right at me and I'm telling him to stop as he's tucking it in his waistband and he turned his back to me as though hiding it."

Villarreal also testified at the suppression hearing. He corroborated Kendall's version of the stop of Defendant. In response to the question of why he patted down Defendant, Villarreal stated that he was "looking for weapons." Instead of finding a weapon, Villarreal testified that he found "a plastic bag in a wad containing four additional plastic bags which contained

-3-

powdered cocaine" in Defendant's right pants pocket. When asked if he initially thought the

cocaine was a weapon, Villarreal responded that he believed it was cocaine because of "the

softness of it and the way it was packaged with plastic." When asked to describe the discovery

of the weapon, Villarreal confirmed Kendall's version of events, adding that "[i]t was placed

there, it wasn't thrown there [near the rear tire] . . . where it could have been retrieved at a later

time."

On cross-examination, defense counsel questioned Villarreal about other items seized

from the Defendant, such as a cellular phone, keys, and cigarettes. Villarreal testified that he did

not remove any of those items, nor did he recall them.

At the conclusion of the suppression hearing, although defense counsel acknowledged

that the officers had the "right to frisk" Defendant, he expressed skepticism about whether

Villarreal would have been able to identify powdered cocaine based solely on "plain feel," which

is the exception used to justify searching Defendant's pockets. Specifically, defense counsel

stated,

> And I would suggest that powder cocaine . . . would be a whole lot harder to identify than crack cocaine. By its texture crack cocaine, you can feel the rocks and I would think that simply patting someone down you might be able to identify that it's crack cocaine.

> Here we've got powder cocaine. But we've got another problem which is I would suggest that this man had a whole bunch of stuff in his pockets. . . .

> And when you're frisking somebody down, how the officer could – could amongst all the items that were in his pockets, identify that this is not only – tell immediately that he's got to be immediately apparent that this was in fact powder cocaine, I would suggest is incredible, that he just could not have done that.

> He was . . . originally allowed only to search for weapons. He found no weapons, but he proceeded . . . to check out and see exactly what else was in his pockets. . . .

-4-

In response, the prosecutor stressed the "deference towards the officer's conclusions based on his experience . . . [is] sufficient to support the seizure of the cocaine." In the alternative, he argued that, given the inevitable discovery of the firearm, the officers would have been justified in arresting Defendant anyway, and they then could have performed a search incident to arrest.

After hearing argument, the district court denied Defendant's Motion to Suppress in open court, concluding:

> [I]t's a somewhat close call, but . . . the officer, Officer Villarreal is an experienced narcotics officer. . . .
>
> And he says his frisk disclosed to him what appeared to be . . . packaged powder cocaine. And he . . . really has no memory . . . of other objects in the pocket, nor does he recall whether the other objects were in that same pocket or in some other pocket of the jeans that were being worn by the defendant.
>
> So on balance the Court finds that there was reasonable – reasonable cause or probable cause to believe that . . . the defendant was in possession of the narcotics which were discovered during a pat down to attempt to determine whether he was carrying a firearm. . . .
>
> . . . .
>
> And . . . my very able senior law clerk points to language here . . . that within the . . . bounds of a *Terry* stop and frisk, the officer may reach into the suspect's clothing and seize any item that the officer reasonably believes based upon his plain feel is a weapon or is contraband, citing *Minnesota v. Dickerson*, 508 U.S. 366. . . .
>
> If a police officer lawfully pats down the suspect's outer clothing and feels an object whose contour or mass make its identity immediately apparent, there's been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons under *Terry*.

Defendant subsequently pled guilty to the cocaine possession count of the indictment. In connection with Defendant's plea, defense counsel filed a motion in limine, petitioning the court to exclude evidence of Defendant's possession of drugs during trial on the felon in possession count of the indictment. Defendant's Motion in Limine was predicated, at least in part, on Rule 403 of the Federal Rules of Evidence, which permits exclusion of otherwise admissible evidence if it would be overly prejudicial.[1]

The district court denied the Motion in Limine, relying primarily upon *United States v. Hardy*, 228 F.3d 745 (6th Cir. 2000). The court stated, at trial, but outside the presence of the jurors, "it seems to me [that the evidence of drug possession] is very pertinent background or res gestae evidence which is to say that's evidence that's inextricably intertwined with the offense that's the subject matter of the trial."

Defendant proceeded to trial on the felon in possession count of the indictment. The district court permitted Kendall to testify about the street value of the cocaine over objection of defense counsel, who reiterated his objection that such information was overly prejudicial because it was impertinent to the alleged gun possession.

The jury returned a guilty verdict and subsequently, on October 28, 2004, Defendant was sentenced to 51 months of incarceration for being a felon in possession of a firearm, and a concurrent term of 12 months incarceration for cocaine possession. Defendant now appeals from this judgment.

---

[1]Defendant's Motion in Limine was also premised on Rule 404(b) of the Federal Rules of Evidence. Defendant contended that because he would plead guilty to the cocaine possession, that evidence was no longer relevant to the felon in possession count of the indictment.

# ANALYSIS

## I. Motion to Suppress

### A. Standard of Review

In an appeal of the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Gillis*, 358 F.3d 386, 390 (6th Cir.), *cert. denied*, 125 S.Ct. 219 (2004); *United States v. Harris*, 192 F.3d 580, 584 (6th Cir. 1999). This Court must give considerable deference to the district court's credibility determinations. *See, e.g., United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003) ("We give great deference to the district court's credibility determinations as it is in the best position to observe witnesses.") (citation omitted).

### B. The Parties's Arguments

Defendant argues that the district court erred when it applied the "plain feel" doctrine, as articulated in *Minnesota v. Dickerson*, 508 U.S. 366 (1993), to the facts developed during the suppression hearing. In *Dickerson*, the Supreme Court extended the "plain view" doctrine, which permits seizure of evidence without a warrant "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object." *Id*. at 375. The *Dickerson* Court explained why this doctrine is amenable to extension:

> We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within
> the meaning of the Fourth Amendment – or at least no search independent of the initial intrusion that gave the officers their vantage point. The warrantless seizure

-7-

of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass *makes its identity immediately apparent*, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id*. at 375-76 (citations and footnote omitted) (emphasis added).

In this case, Defendant concedes that the officers had a right to frisk him for weapons. (Def.'s Br. at 14.) He argues, however, that the testimony of Officer Villarreal failed to establish that the bulge detected by him was "immediately apparent" as contraband especially since the package consisted of a small amount of powder cocaine. According to Defendant, the cases from this Circuit that have justified seizures of cocaine based upon "plain feel" have involved crack cocaine. *Weaver v. Shadoan*, 340 F.3d 398, 409 (6th Cir. 2003); *United States v. Walker*, 181 F.3d 774, 779-80 (6th Cir. 1999). Finally, as he argued to the district court, Defendant maintains that the distinctive shape and feel of crack cocaine makes it more easily identifiable as contraband than does a package of powder cocaine.

The government argues that pursuant to the plain feel doctrine, the district court credited the testimony of Officer Villarreal who felt something in Defendant's pocket that he recognized as powder cocaine from his training and experience as a narcotics officer. In the alternative, the government argues that the cocaine was subject to inevitable discovery because Defendant would have been arrested for carrying a concealed weapon and reckless discharge of a firearm and then subjected to a search incident to arrest. (Government's Br. at 24.)

C.  The District Court Did Not Err in Denying Defendant's Motion to Suppress

We review credibility determinations for clear error.  *Johnson*, 344 F.3d at 567.  Based upon the record, the district court did not clearly err when it credited Officer Villarreal's testimony.  The district court supported its finding by taking into account Officer Villarreal's experience as a narcotics officer, it determined that the officer had probable cause to pat down Defendant for weapons – a point which Defendant concedes – and that pat down disclosed the existence of cocaine on Defendant's person.  Such a determination is not clearly erroneous.

The Court further finds that even if the district court clearly erred in crediting Officer Villarreal's testimony, the cocaine would have been obtained under the doctrine of inevitable discovery.  This doctrine, which is an exception to the exclusionary rule, "allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)).  "[T]he government can meet its burden of showing that the tainted evidence inevitably would have been discovered through lawful means by establishing that, 'by following routine procedures, the police would inevitably have uncovered the evidence.'"  *United States v. Vite-Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003) (quoting *Kennedy*, 61 F.3d at 500 (quoting *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1399 (9th Cir. 1989))).

In this case, Officer Kendall testified at the suppression hearing that he observed Defendant place a black object in his waistband, and shortly thereafter Defendant walked behind a black Oldsmobile Bravada parked nearby, where "he bent down as though he was placing something on the ground and then stepped to the rear passenger side of that Oldsmobile

Bravada." When Officer Villarreal frisked Defendant, he discovered no weapon on his person, but a firearm was recovered at the location where Officer Kendall observed Defendant bend down and appear to place something on the ground. According to the government, given Defendant's concession that the officers had reasonable suspicion to search him for weapons and upon discovery of the firearm in the location where Defendant placed it, probable cause existed for the officers to arrest Defendant for carrying a concealed weapon and reckless discharge of a firearm. Following routine procedures, once Defendant was placed under arrest, the officers would have searched Defendant and then they would have discovered the cocaine. Thus, the government has sustained its burden of proving that it was inevitable that the cocaine would have been acquired from Defendant by lawful means. *Vite-Espinoza*, 342 F.3d at 466; *Kennedy*, 61 F.3d at 497.

## II. Motion in Limine

### A. Standard of Review

We review the decision of a district court denying a defendant's motion in limine to exclude evidence of cocaine possession for abuse of discretion. *See United States v. Hilliard*, 11 F.3d 618, 619 (6th Cir. 1993) (holding that a district court's evidentiary ruling is reviewed under an abuse of discretion standard) (citing *United States v. Noel*, 938 F.2d 685, 688 (6th Cir. 1991)).

### B. The District Court's Rationale

As discussed earlier, the district court relied upon *United States v. Hardy*, 228 F.3d 745 (6th Cir. 2000), in concluding that admission of testimony concerning Defendant's cocaine possession was admissible as "background" or *res gestae* evidence. In *Hardy*, this Court

-10-

recognized "the propriety of introducing 'background' evidence." *Id*. at 748 (citing *United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000)), noting that:

> Such evidence, often referred to as "*res gestae*" does not implicate Rule 404(b). 2 Jack B. Weinstein, Margaret A. Berger & Joseph M. McLaughlin, Weinstein's Federal Evidence, § 404.20[2][c]. However, . . . the "background circumstances exception" to the general exclusion of other act evidence is not an open ended basis to admit any and all other act evidence the proponent wishes to introduce. Rather the very definition of what constitutes background evidence contains inherent limitations. . . . [C]ases dealing with this issue teach that background or *res gestae* evidence consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense. . . .

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Hardy*, 228 F.3d at 748 (citations omitted).

In light of *Hardy*, the district court offered the following take on the facts:

> Of course the subject matter of the trial is whether this defendant is a felon in possession of a firearm. The police officer's discovery of the cocaine and the firearm are in my estimation both temporally and spatially connected to one another. And it seems to me that to exclude the cocaine then would – would require the Government to provide the jury with what is an incomplete story of the charged offense . . . .

Although it relied primarily upon the *res gestae* rationale, the district court also addressed whether the cocaine evidence was admissible pursuant to Rule 404(b) of the Federal Rules of Evidence to show motive:

> [T]here's no dispute about the [f]act the defendant possessed cocaine, obviously that's beyond dispute. And I think that . . . cocaine evidence is probative to the possession of the firearm. It provides an explanation as to why he was in possession

of the firearm even though he's not charged there as a trafficker and perhaps he was not a trafficker.

. . . .

Here . . . the risk of the jury improperly convicting the defendant for possessing a firearm merely because they view him as a bad person as a result of the cocaine is slight – is outweighed by what I consider the significant probative value of the cocaine on a legitimate – and a legitimate, a material issue. That is the motive for possessing the firearm.

### C.  The Parties's Arguments

Defendant contends that introduction of evidence of his cocaine possession unduly prejudiced him given the circumstantial nature of the proof.[2]  First, it was not relevant to any element of the firearm offense and, therefore, was not needed to "complete the story."  (Def.'s Br. at 18.)  Defendant points out that cases where "background" evidence is permitted usually involve a charge of conspiracy to engage in drug trafficking, not simple possession of drugs. Second, reference to the cocaine was not isolated:  the prosecution mentioned it during its opening and closing statements, the cocaine was admitted as an exhibit over objection, and Officer Kendall testified to its street value over objection.  According to Defendant, these factors, coupled with the fact that the firearm was not in Defendant's possession,[3] increase the likelihood that the jury was unfairly prejudiced.

The government argues that seizure of the cocaine was "integral" to Officer Villarreal's testimony because it makes possession of the gun more likely, given that Defendant had cash and cocaine on his person but nothing to protect those items.  (Government's Br. at 26.)  If, as this

---

[2] The jury had obvious difficulty reaching a verdict, at one point informing the court that they were deadlocked.  After the district court gave them an *Allen* charge based on this Circuit's pattern instructions, the jury returned a guilty verdict.

[3] Furthermore, Defendant's fingerprints were not found on the gun.

Court has observed, the possession of firearms constitutes evidence of involvement in drug trafficking, *United States v. Ware*, 161 F.3d 414, 417-18 (6th Cir. 1998), then the government contends that the converse is true: evidence of cocaine possession should be viewed as supporting the possession of a firearm.

In addition to asserting that the cocaine possession is proper *res gestae* evidence, the government maintains its Rule 404(b) argument that the cocaine is probative of motive, even though the district court itself expressed reservations about that argument.

Finally, the government notes that Defendant himself made use of his drug possession plea during closing argument by offering it as a reason why he attempted to evade Officer Kendall. At trial, defendant counsel stated, "And I suggest that at that point he's thinking I got this cocaine, I'd better get away from this officer." Defense counsel concluded his argument in this fashion:

> As I told you before he's not an innocent man. He was in possession of cocaine. He's going to have to face the penalty on that charge.
>
>     . . . .
>
> . . . He's pled guilty to the crime he did commit and he should not be convicted of the crime he did not commit.

D. The District Court Did Not Err in Denying Defendant's Motion in Limine

The district court did not abuse its discretion in permitting the introduction of evidence of Defendant's cocaine possession for three reasons. First, a stipulation to the cocaine possession offense would not have fully informed the jury about the events that led to Defendant's arrest. Certainly, Defendant's possession of powder cocaine (and $590 in small bills) has some probative value in establishing possession of a firearm. Second, when the district court took

-13-

judicial notice of Defendant's guilty plea to cocaine possession, Defendant did not object. The jury's awareness of Defendant's guilty plea, in the absence of defense objection, tends to undercut Defendant's argument that the introduction of such evidence prejudiced him. Third, although the introduction of cocaine evidence could have had a prejudicial effect, the very fact that Defendant used his possession of cocaine to explain his own behavior that evening shows that prejudice cannot be presumed. Accordingly, evidence of Defendant's cocaine possession was not admitted improperly.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Defendant's Motion to Suppress cocaine seized based upon the "plain feel" doctrine, and his Motion in Limine to exclude evidence of cocaine possession.