NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0418n.06

Case No. 22-6087

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 02, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| MACK MATTHEWS, | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. After Mack Matthews consented to a search, the searching officer found an illegal gun. Matthews now argues that the district court clearly erred in concluding he consented. We disagree and affirm.

I.

Tennessee Highway Patrol Trooper Rico Mazique spotted Mack Matthews and his truck in a ditch alongside the highway.[1] So he stopped to investigate. As he and Matthews talked, Trooper Mazique noticed that Matthews smelled like alcohol and had bloodshot eyes. Matthews admitted he'd been drinking that night, so Trooper Mazique decided to conduct a field sobriety test. Matthews agreed.

---

[1] In reciting these facts, we rely mainly on dashcam footage from Trooper Mazique's patrol car. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). And because Matthews doesn't dispute Trooper Mazique's testimony from the suppression hearing, we rely on it for the facts that video didn't capture.

To conduct the test safely, Trooper Mazique asked Matthews if he could pat him down for weapons. According to Trooper Mazique, Matthews agreed. Matthews then emptied his pockets and put his hands on the hood of Trooper Mazique's car. During the frisk, Trooper Mazique seized a gun that fell from Matthews's waistband. Matthews eventually failed the sobriety test, and Trooper Mazique arrested him for drunk driving. A federal grand jury later indicted Matthews for possessing the gun as a felon. *See* 18 U.S.C. § 922(g)(1).

Matthews moved to suppress the gun, arguing that the frisk violated the Fourth Amendment and relying on Trooper Mazique's post-event report, which doesn't mention consent. At the suppression hearing, however, Trooper Mazique testified that Matthews consented to the frisk. The magistrate judge credited Trooper Mazique's testimony and recommended that the district court deny Matthews's motion. The district court did so, adopting the magistrate judge's undisputed factual findings. Matthews appealed, arguing that the government failed to meet its burden to show he consented voluntarily.

II.

At the outset, we are skeptical that Matthews properly preserved his argument. In his objection to the magistrate judge's findings of fact, Matthews devoted only one sentence to challenging the finding that he consented. The district court, after noting that Matthews's argument was "unclear," held that he'd failed to object to the magistrate judge's consent finding. R. 42, Pg. ID 86.

Normally, that's a deal breaker. If a party doesn't object to a magistrate judge's finding, he's waived that argument as long as he—like Matthews—knew about the potential waiver. *See United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019). And we don't review waived arguments. *United States v. Akridge*, 62 F.4th 258, 263 (6th Cir. 2023). But we agree with the

district court that Matthews's objection is "unclear." On the one hand, his main point seems obvious: the evidence "fail[s] to indicate that Mr. Matthews ever consented to the pat down." R. 38, Pg. ID 71. On the other, he includes only general references to the record in support of that argument. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Ultimately, the outcome is the same whether Matthews waived or not. And because "neither party raised the potential waiver issue," we "proceed under the assumption" that he preserved the argument. *See Hill v. Shoop*, 11 F.4th 373, 384 n.4 (6th Cir. 2021) (en banc).

## A.

The government must prove consent by a preponderance of the evidence, and we evaluate voluntariness by looking at "the totality of the circumstances." *United States v. Blomquist*, 976 F.3d 755, 758–59 (6th Cir. 2020). That includes factors like the suspect's age and background, his criminal history and knowledge of his rights, the length and nature of the detention, and the officer's conduct during the detention. *Id.*

Matthews argues that the evidence doesn't support the district court's finding that he voluntarily consented. "Since consent is a question of fact, we look at the evidence in the light most favorable to the government and reverse only for clear error." *Id.* at 758. No clear error existed here.

At the suppression hearing, only Trooper Mazique testified. He testified that he asked Matthews if he could perform the frisk and that Matthews consented. He explained that Matthews was "free to refuse the pat down" but agreed to it anyway. R. 63, Pg. ID 240. After hearing Trooper Mazique's sworn testimony and reviewing his post-event affidavit and narrative, the magistrate judge credited Trooper Mazique's testimony and concluded that Matthews had freely "consented to the pat-down." R. 37, Pg. ID 62, 66. The district court agreed.

Matthews suggests that the district court shouldn't have trusted Trooper Mazique. But in situations like this, we defer to the factfinder's credibility determination. *See Anderson v. City of Bessemer*, 470 U.S. 564, 574–75 (1985); *United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005). And for good reason—the magistrate judge is best suited to evaluate the witness's demeanor and determine whether he's telling the truth. *See Anderson*, 470 U.S. at 574–75. We won't second guess the factfinder who heard the testimony firsthand without "a definite and firm conviction that a mistake has been committed." *Blomquist*, 976 F.3d at 758. That's especially true here, where the consent determination rises and falls with Trooper Mazique's credibility. *See Hudson*, 405 F.3d at 442.

The rest of the record confirms that the district court's finding was correct. For one, Matthews had already consented to sobriety testing, so his cooperation in the frisk is unremarkable. For another, the dashcam footage shows that Matthews is calm and compliant through nearly the entire encounter, with one exception we address below. After he and Trooper Mazique inspect Matthews's truck, the pair stroll side-by-side to Trooper Mazique's car. Once there, Matthews empties his pockets, puts a cigarette in his mouth, then leans over the car for Trooper Mazique to frisk him. That is hardly how someone under duress would act. *See United States v. Chambers*, 646 F. App'x 445, 448 (6th Cir. 2016). Indeed, Matthews's "cooperation supports a finding of voluntary consent." *See Blomquist*, 976 F.3d at 759. Trooper Mazique, for his part, doesn't appear threatening; his discussion with Matthews seems civil. His conduct is far from the "objectively improper" police behavior necessary to show coercion. *United States v. Elkins*, 300 F.3d 638, 648 (6th Cir. 2002). Nothing else in the record suggests that Trooper Mazique behaved improperly during the detention. If anything, his behavior was exemplary. The video, in short, only supports the district court's findings.

Finally, "the totality of the circumstances" does not show that Matthews was unusually susceptible to duress or coercion. *Blomquist*, 976 F.3d at 759. Matthews was nearly 40 years old when he was arrested. He has more than a dozen convictions for violent crimes over a criminal history that spans a quarter century. Matthews was thus familiar with law enforcement and has given us "no reason to think" his consent was mere capitulation. *See id.* at 759–60. When Matthews consented, moreover, he'd been detained for about five minutes. As we've put it before, that's an "extremely short" detention unlikely to have worn Matthews down to the point of giving in. *See United States v. Johnson*, 109 F. App'x 76, 80 (6th Cir. 2004). These circumstances, in short, don't show that Matthews's "will was overborne" such that his consent was involuntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

In sum, the district court did not clearly err in finding that Matthews voluntarily consented.

B.

Matthews disagrees, but his arguments fail. He first attacks Trooper Mazique's affidavit and narrative because they don't specifically mention that Matthews consented. But the main purpose of those documents is to summarize the night's events. Officers must complete them as a matter of course before booking an individual into jail; they don't follow hard-and-fast requirements for length or specificity. So it's not surprising that Trooper Mazique didn't include every single detail from the stop. And nothing that Trooper Mazique *did* include contradicts his testimony at the suppression hearing.

Next, Matthews suggests that Trooper Mazique's reason for searching him was improper. He claims that Trooper Mazique's safety rationale was a sham because he didn't believe Matthews was armed. But even if that were true, it'd be irrelevant. The *only* fact that matters is that Matthews consented to the frisk. That is, the frisk was "wholly valid" under the Fourth Amendment

- 5 -

regardless of Trooper Mazique's motivation. *Schneckloth*, 412 U.S. at 222; *see also Brigham City v. Stuart*, 547 U.S. 398, 404–05 (2006).

Finally, Matthews identifies two isolated snippets of the record that he thinks show a lack of consent. He first points to a moment during the frisk when he took his hands off the car and became "agitated." Appellant Br. at 23–24. In his view, that moment shows he was being coerced into submission. Matthews then notes that, sometime during the suppression hearing, Trooper Mazique said he "notified" Matthews about the pat down. *Id.* at 17. That word choice, his argument goes, shows the frisk would've proceeded with or without consent.

We disagree on both counts. Matthews only took his hands off the car once Trooper Mazique began frisking his waist. Rather than "acquiescence in the face of authority," Matthews's reaction is more likely that of a person anticipating imminent discovery of his illegal gun. *Id.* at 24. Matthews's linguistic argument fares no better; subtle inferences drawn from Trooper Mazique's word choice can't overcome his unequivocal testimony that Matthews freely consented.

In any event, Matthews's arguments don't clearly refute the district court's finding. Trooper Mazique testified that Matthews was free to refuse the frisk but consented to it anyway. The magistrate judge credited that testimony, and the district court adopted it as fact. The video shows Matthews complying with Trooper Mazique's requests. And the primary evidence Matthews offered in support of his suppression motion—Trooper Mazique's report—is neutral at best. Matthews's suggestion that he merely yielded to coercive authority finds no support in the record. On the contrary, the record confirms that the district court correctly denied Matthews's motion to suppress.

C.

Even if, however, Matthews hadn't consented to the pat down, Trooper Mazique would have inevitably discovered the gun. Evidence seized unconstitutionally is nonetheless admissible if police, following "routine procedures," would have inevitably discovered it. *United States v. Kennedy*, 61 F.3d 494, 499–500 (6th Cir. 1995); *Nix v. Williams*, 467 U.S. 431, 443–44 (1984).

Before conducting the pat down, Trooper Mazique had already decided on (and Matthews had already agreed to) sobriety testing. That testing showed Matthews was driving drunk and gave Trooper Mazique probable cause to arrest him. The gun, in turn, would've been discovered during a routine search incident to that lawful arrest. *See United States v. Robinson*, 414 U.S. 218, 235 (1973). We have repeatedly upheld applications of the inevitable-discovery doctrine on similar facts. *See, e.g.*, *United States v. McGlown*, 150 F. App'x 462, 468 (6th Cir. 2005); *United States v. Mohammed*, 512 F. App'x 583, 589 (6th Cir. 2013). We thus agree with the district court that even without the pat down, Trooper Mazique would've arrested Matthews, and Matthews "would have been searched incident to that arrest." R. 42, Pg. ID 90. And failing that, surely the Shelby County Detention Center would've found the gun pursuant to its booking procedures. *Cf. Argyropoulos v. City of Alton*, 539 F.3d 724, 728 (7th Cir. 2008) (explaining that "prisoner pat-downs" are "tasks incidental to the booking process").

We affirm.