**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0385n.06

No. 08-5460

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**May 28, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| ROMAL HUNTER, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:     BATCHELDER and COLE, Circuit Judges; LAWSON, District Judge[*]

**COLE, Circuit Judge.**  Defendant-appellant, Romal Hunter, appeals his conviction for

possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Hunter argues that the district court erred in denying his motion to suppress all evidence and any

alleged statements arising from his arrest because the police officers were not justified in stopping

his vehicle, and the subsequent search and seizure violated the Fourth Amendment.  For the

following reasons, we **AFFIRM** Hunter's conviction.

**I.  BACKGROUND**

At approximately 1:00 p.m. on April 12, 2007, Detective Brian Dill of the Shelby County,

Tennessee Sheriff's Department received information from a confidential informant ("CI") that later

_____

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of
Michigan, sitting by designation.

that day Hunter would be transporting a large quantity of methamphetamine in the vicinity of Mt. Moriah and Hickory Hill Roads in a blue 2000 Chevrolet Tahoe with Tennessee license plate 325-LPF. During the hearing on Hunter's motion to suppress, Detective Dill testified that the CI who had called in the tip had previously provided the Shelby County Police Department with reliable information "six or seven" times, resulting in both seizures of narcotics and arrests, but he could not elaborate on any of those prior instances.

That evening, Detective Dill briefed a group of Shelby County officers on the CI's tip and provided them with a description of the vehicle as well as a photograph of Hunter. Neither Dill nor any other Shelby County officer attempted to secure a warrant for Hunter's arrest.

At approximately 7:00 p.m., Detective Dill established surveillance in the vicinity of Mt. Moriah and Hickory Hill Roads. Field Commander Sergeant Gary Rogers and Detectives Brett Simonsen and Mays also established surveillance in that vicinity between approximately 7:30 and 8:00 that same evening.

At about 9:50 p.m., Detective Dill identified Hunter driving southbound on Hickory Hill Road in a car that matched the CI's description—a blue 2000 Chevrolet Tahoe with Tennessee license plate number 325-LPF. Dill radioed other members of the department, informing them that he had observed Hunter. Shortly thereafter, Detective Simonsen observed Hunter at the intersection of Knight Arnold and Hickory Hill Roads. Simonsen recognized Hunter from an earlier stop.

Detective Simonsen made a U-turn to get behind Hunter, and he activated his lights and his siren. Hunter stopped his vehicle on the right-hand traffic lane of Knight Arnold Road. Detective Simonsen approached Hunter's driver's-side window, and Detective Mays proceeded to the

passenger's-side window. Detective Simonsen took Hunter's license, and stated, "Oh, you again." (Suppression Hr'g Tr., Record on Appeal ("ROA") 40.) According to Detective Simonsen's testimony at the suppression hearing, there was heavy traffic, and in that area, Knight Arnold Road consists of two traffic lanes and a small center turn lane, with no emergency lane. He explained to Hunter that he was being stopped "for his cracked windshield," and he asked Hunter to exit the car so that the detectives would be safe from the oncoming traffic. (ROA 40.) Hunter refused, stating, "No, I'm not getting out of the vehicle. I'm in a hurry. I'm not getting out." (ROA 40.) After Simonsen asked Hunter to exit his car and was refused a second time, he noticed that Hunter's car was not in "park" and that Hunter's foot was on the brake. Simonsen then stepped away from the vehicle and radioed other Shelby County officers, asking them to "step it up" because "I believe he's going to get ready to run." (ROA 41.) Within fifteen to twenty seconds, another officer arrived on the scene and blocked Hunter's car while Dill "pulled up to the side." (ROA 41.)

Detective Simonsen drew his weapon and ordered Hunter to exit the vehicle. When Hunter still did not comply, Simonsen and Mays physically removed him from the car. Simonsen testified that once Hunter was out of the vehicle, Simonsen grabbed Hunter's shorts to pull them up, when a clear plastic bag filled with what appeared to be methamphetamine fell to the ground. Simonsen then conducted a search of Hunter's person and discovered a similar bag in his groin area, and a small amount of marijuana in his right front pocket. The officers arrested Hunter. Hunter was never issued a citation for driving with a cracked windshield.

On May 1, 2007, a Western District of Tennessee grand jury returned an indictment charging Hunter with violating 21 U.S.C. § 841(a)(1). On July 31, 2007, Hunter filed a motion to suppress

evidence seized during the stop. The district court heard testimony on the motion to suppress on September 27, 2007. On October 31, 2007, the district court concluded the hearing and denied the motion. Hunter entered a conditional guilty plea on December 11, 2007, preserving various issues for appeal. On April 4, 2008, the district court entered its judgment, sentencing Hunter to 120 months' imprisonment followed by four years of supervised release. Defendant timely appealed.

## II. DISCUSSION

### A. Standard of Review

When reviewing a district court's denial of a motion to suppress evidence, "we accept the district court's factual findings unless they are clearly erroneous," and we review its conclusions of law de novo. *United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir. 2007) (citing *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000)). Moreover, we consider the evidence in the light most favorable to the United States. *See United States v. Wellman*, 185 F.3d 651, 655 (6th Cir. 1999).

### B. Analysis

#### 1. The initial stop

On appeal, Hunter makes two main arguments challenging the district court's denial of his motion to suppress: (1) the officers had neither probable cause nor reasonable suspicion to stop his car based on his cracked windshield or the CI's tip; and (2) the search and seizure following the traffic stop violated Hunter's Fourth Amendment rights. We first examine whether the CI's tip provided officers with the requisite reasonable suspicion to justify a stop of Hunter's vehicle. Stopping a vehicle and detaining its occupants amounts to a seizure under the Fourth Amendment of the Constitution. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979). However, when officers

have a "particularized and objective basis for suspecting" that the occupants of a vehicle are engaged in criminal activity and are "aware of specific and articulable facts which give rise to reasonable suspicion," they may briefly stop the vehicle to investigate. *United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2009) (internal citations omitted). "An officer must not act on an inchoate and unparticularized suspicion or hunch, but [on] the specific reasonable inferences [] which he is entitled to draw from the facts in light of his experience." *Id*. (quoting *United States v. Urrieta*, 520 F.3d 569, 573 (6th Cir. 2008)) (internal quotation marks omitted). Moreover, "we consider the totality of the circumstances [surrounding the stop] to determine" whether it was reasonable. *Id*.

Based on the totality of the circumstances, we agree with the district court's conclusion that the officers had the necessary reasonable suspicion to justify stopping Hunter. Tips containing specific predictive information from a known and reliable CI, which officers investigate and verify, may have the sufficient indicia of reliability to justify a *Terry* stop. *See Adams v. Williams*, 407 U.S. 143, 146-47 (1972) (upholding *Terry* stop when the officer investigated and verified information he received from a known informant who had provided him with information in the past and who had come forward personally to give information) and *McCray v. Illinois*, 386 U.S. 300, 304 (1967) (stating that information from a proven and reliable informant, combined with police corroboration of the informant's tip, is sufficient to establish probable cause); *but see Fla. v. J.L.*, 529 U.S. 266, 270 (2000) (holding that the anonymous call concerning the defendant was not sufficiently reliable to justify a *Terry* stop of defendant when the informant provided no predictive information from which officers could test the informant's knowledge or credibility). Hunter argues that the district court should not have accepted Detective Dill's assertion that the CI had been reliable in the past

because on cross-examination Dill could not relay details about specific past instances where the CI's "tips" had secured an arrest or a seizure of narcotics. Although Dill's inability to provide details of past tips may have called his credibility into question, "we accord considerable deference to the credibility findings of the trial court" and will not overturn a district court's credibility determination at a suppression hearing unless that defendant "establish[es] that the district court's conclusion was clearly erroneous." *United States v. McCauley*, 548 F.3d 440, 447 (6th Cir. 2008) (quoting *United States v. Cooke*, 915 F.2d 250, 252 (6th Cir. 1990). The district court's acceptance of Detective Dill's testimony that the CI had been reliable in the past was not clear error. Having accepted that testimony as true, we conclude that the district court did not clearly err in finding the CI reliable. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 646 (6th Cir. 2003) (noting that informant who had assisted law enforcement with information leading to more than three arrests and convictions was sufficiently reliable to justify the issuance of a search warrant); *United States v. Williams*, 224 F.3d 530, 532-33 (6th Cir. 2000) (concluding that a confidential informant who had previously provided officers with information leading to "arrests and convictions" is sufficiently reliable).

Considering the totality of the circumstances, information from a known CI who had provided reliable information six or seven times in the past, combined with the fact that the CI's information was corroborated by the events that occurred on April 12, 2007—Hunter driving in the vicinity on the evening in question in the car described by the CI—is sufficient to support the district court's finding that the CI's tip provided the officers with reasonable suspicion that Hunter was involved in criminal conduct. *See United States v. Canfield*, 212 F.3d 713, 720 (2d Cir. 2000) (holding that the informant's tip is reliable where officers' corroboration of details made it

sufficiently likely that the informant was truthful about defendant's criminal actions). Finally, because we have concluded that the officers' actions based on the CI's tip were not violative of the Fourth Amendment, we need not reach the question of whether their stop of Hunter based on his vehicle's cracked windshield violated his Fourth Amendment rights.

2.      *The scope of the stop*

The fact that the officers had reasonable suspicion to stop Hunter does not end our inquiry. "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "Once the purposes of the traffic stop [have been] completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable, articulable suspicion that criminal activity was afoot." *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004) (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)).

Having properly detained Hunter based on the CI's tip, the totality of the circumstances justified Detective Simonsen's order to Hunter to exit the vehicle. *See Penn. v. Mimms*, 434 U.S. 106, 111 (1977) (holding that a police officer may, as a matter of course, order the driver of a lawfully stopped car to exit his vehicle: "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety."); *see also United States v. Wilson*, 506 F.3d 488, 495 (6th Cir. 2007) (noting that the risk an officer faces when he approaches a person seated in a car "stems in part from the 'hazard of accidental injury from passing traffic,' and not solely from the potential of assault on the officer by the person seated in the vehicle").

Hunter's refusal to comply with Detective Simonsen's repeated requests to exit the car combined with Simonsen's discovery that Hunter's car was not in "park" and that Hunter's foot was on the brake, justified the officers' decision to forcibly remove him from his car for their safety. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). When the officers were removing Hunter from the car, the aforementioned clear plastic bag fell to the ground in front of Simonsen, and he appropriately seized it under the "plain view doctrine." *Horton v. California*, 496 U.S. 128, 135 (1990) (explaining that the "plain view doctrine" is an "exception to the general rule that warrantless searches are presumptively unreasonable," which is applied "where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object") (citing *Harris v. United States*, 390 U.S. 234 (1968); *Frazier v. Cupp*, 394 U.S. 731 (1969); *Ker v. California*, 374 U.S. 23, 43 (1963)). The question, therefore, is whether the officers were reasonable in effectuating a warrantless seizure based on their plain view of what appeared to be methamphetamine. We conclude that they were.

The Supreme Court has held that three conditions must be satisfied to justify a warrantless seizure: (1) the seizing officer must not have violated the Fourth Amendment "in arriving at the place from which the evidence could be plainly viewed"; (2) the item must not only be in plain sight, but "its incriminating character must also be immediately apparent"; and (3) the officer must be lawfully located in a place from which the object can be plainly seen, and he must also have a lawful right of access to the object itself. *Horton*, 496 U.S. at 136-37. Here, all three conditions were satisfied. The officers had reasonable suspicion to stop Hunter based on the CI's tip, and Hunter's

repeated refusals to exit the car and the fact that he appeared ready to flee entitled the officers to remove Hunter from his vehicle. At that point, the incriminating nature of the plastic bag of methamphetamine that fell from Hunter's shorts was apparent, and the officers were justified in both seizing it and conducting a more extensive search of Hunter's person. *See Arizona v. Gant*, No. 07-542, — S. Ct. —, 2009 WL 1045962, *6 (April 21, 2009) (noting that its decision in *Chimel v. California*, 395 U.S. 752 (1969) (holding that "a search incident to arrest may include the arrestee's person") continues to justify a warrantless search of an arrestee's person during a stop). Thus, the officers' detention of Hunter following the traffic stop, as well as the search and seizure that followed, did not violate Hunter's Fourth Amendment rights.

### III. CONCLUSION

For the foregoing reasons, we uphold the district court's denial of Hunter's motion to suppress and **AFFIRM** his conviction.