NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0258n.06

No. 13-5757

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Apr 09, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| WILLIAM BOST, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |

BOGGS and KETHLEDGE, Circuit Judges; RESTANI, Judge.[*]

BOGGS, Circuit Judge. Defendant-Appellant William Bost appeals the district court's denial of his motion to suppress evidence gathered during a traffic stop. For the reasons below, we affirm the judgment of the district court.

**I**

On or about November 1, 2011, at approximately 3:32 p.m., Knoxville Police Officer Horace Lane, in his police cruiser, observed Bost illegally changing lanes. Officer Lane pulled Bost over and, on foot, approached Bost's car to speak with him. The two conversed courteously until Officer Lane noticed three cell phones in Bost's car. After Officer Lane asked Bost about the phones, Officer Lane asked Bost to step out of the car.

Bost did not immediately comply. Officer Lane perceived that Bost put his hand between the center console and a child's seat in the front of the car. In response, Officer Lane's demeanor changed: he pulled his gun and, soon thereafter, his taser, and yelled for Bost to put his hands in

---

[*] The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

view.  After several seconds, Bost complied.  Officer Lane ordered Bost to get out of the car; Bost did.  Officer Lane handcuffed Bost, threatened to tase him if he moved, kicked his legs open, and patted him down.  During the patdown, Officer Lane found neither weapons nor contraband.

After the patdown, Officer Lane continued to detain Bost.  Officer Lane put Bost on the hood of his cruiser.  Observing Bost chewing something, Officer Lane instructed him to open his mouth.  Officer Lane perceived that, in response, Bost began to chew faster.  Officer Lane lunged at Bost's mouth, and the two struggled.  During the struggle, Officers James Hunley and Richard Wallace arrived, Wallace with a drug dog, and joined the fracas.  Bost eventually spit out what was in his mouth: gum.

After the struggle, the officers found three bags of crack cocaine: one near the rear bumper of Bost's truck, one on the ground near the spot where Bost had struggled with the officer, and one on Bost's person.  Although the canine alerted to the truck, the officers did not find drugs in the truck.

The government charged Bost with possession, with intent to distribute, of twenty-eight or more grams of crack cocaine, in violation of 21 U.S.C. § 841.  On February 17, 2012, Bost moved to suppress, arguing that the police discovered all the relevant evidence as a result of an unconstitutional search.  A magistrate judge issued a report and recommendation that distinguished between Officer Lane's actions before the search of Bost's mouth, as to which it found Officer Lane's reasonable suspicion of threat to his safety justified, and the search of Bost's mouth and subsequent scuffle, which it found unconstitutional.  Nonetheless, the report and recommendation suggested that the district court deny Bost's motion to suppress on inevitable-discovery grounds.  On July 11, 2012, the district court adopted the report and

2

recommendation. In September 2012, retaining the right to appeal the denial of his motion to suppress, Bost pleaded guilty. On May 2, 2013, the district court sentenced Bost to a term of 262 months of imprisonment, followed by 8 years of supervised release. Final judgment was entered on May 7. Bost timely appealed.

## II

### A

We "revie[w] the district court's decision on a motion to suppress under two complementary standards[: ]the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Blair*, 524 F.3d 740, 747 (6th Cir. 2008). Further, we "must consider the evidence in a light most favorable to the government, as it was the prevailing party in the district court." *United States v. Tillman*, 543 F. App'x 557, 559-60 (6th Cir. 2013).

#### 1

The seminal case concerning the constitutionality of searches during police stops is *Terry v. Ohio*, 392 U.S. 1 (1968). The *Terry* Court conditioned the constitutionality of a search arising from an investigatory stop on (1) whether the police initiated the stop lawfully and (2) whether the search was reasonably related in scope and duration to its justification.

*Terry* applies to traffic stops. *See Arizona v. Johnson*, 555 U.S. 323, 330 (2009). Traffic stops are "especially fraught with danger to police officers." *Michigan v. Long*, 463 U.S. 1032, 1047 (1983). But "the officers['] routin[e] exercise [of] unquestioned command of the situation" minimizes "[t]he risk of harm" to the police and the vehicle's occupants. *Maryland v. Wilson*, 519 U.S. 408, 414 (1997) (internal quotation marks omitted). For example, "[e]stablishing a face-to-face confrontation diminishes the possibility, otherwise substantial, that the driver can

make unobserved movements; this, in turn, reduces the likelihood that the officer will be the victim of an assault." *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977).

The Supreme Court has explained that, "in a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Johnson*, 555 U.S. at 327. Office Lane's initial pull-over—inquiring into Bost's illegal changing of lanes—was lawful. We need not address Bost's contention that it was "pretext," because an officer's subjective motivation for pulling over a driver does not affect the lawfulness of a stop or a subsequent search. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

"The second part of the *Terry* inquiry," as a general matter, "examines whether the stop was 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Perez*, 440 F.3d 363, 372 (6th Cir. 2006) (quoting *Terry*, 392 U.S. at 20). This doctrine, like the *Terry* doctrine generally, applies to traffic stops. Officer Lane's actions subsequent to the pull-over constitute the heart of the dispute here: what was the search, what justified it, and was the relation between the two reasonable?

The original purpose of the stop was to cite Bost for a traffic violation. During the course of issuing Bost a citation for that violation, Officer Lane observed multiple cell phones. Thereafter, Officer Lane requested that Bost step out of his truck. It's true that the mere presence of multiple cell phones itself is unlikely to suffice to justify further search and detention. *See, e.g.*, *United States v. Townsend*, 305 F.3d 537, 544 (6th Cir. 2002). But the Constitution allows Officer Lane to ask the motorist to exit the vehicle in the course of any lawful traffic stop. *See Mimms*, 434 U.S. at 111. So this request was constitutional even before Officer Lane saw the cell phones.

4

But our inquiry cannot end here. Office Lane did not merely order Bost out of the car; he patted him down and detained him further. This subsequent detention does not seem reasonably related to issuing a traffic citation. Under *Terry*, once an officer has completed the original purpose of the stop, the original justification for the stop does not justify further detention. So "an officer cannot further detain the vehicle or its occupants unless something happened during the stop to cause the officer to have" reasonable suspicion of criminal activity. *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005) (emphasis omitted). In other words, "all the officer's actions must be reasonably related in scope to circumstances justifying the original interference" *unless* the officer has "reasonable suspicion that the individual has engaged in . . . criminal conduct" that is "more extensive" than the conduct for which he is issuing "the traffic citation . . . ." *Townsend*, 305 F.3d at 541 (6th Cir. 2002) (internal quotation marks omitted). Officer Lane had such reasonable suspicion.

"Reasonable suspicion," we have explained,

> requires that an officer have 'articulable reasons and a particularized and objective basis' for assuming criminal activity is afoot. Absolute certainty is not required to justify a frisk; 'the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'

*Tillman*, 543 F. App'x at 560 (quoting *Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003) and *Terry*, 392 U.S. at 27). "The reasonable suspicion required for continued investigatory detention is not as demanding a standard . . . as the probable cause required for the ultimate search." *Townsend*, 305 F.3d at 541. Moreover, "[a]rticulating precisely what reasonable suspicion . . . mean[s] is not possible. [It is a] commonsense, non-technical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act[.] As such, the standar[d is] not readily, or even usefully, reduced to a neat

set of legal rules." *Ornelas v. United States*, 517 U.S. 690, 695-96 (internal quotation marks and citations omitted). And although we review the ultimate reasonable-suspicion determination de novo, *Ornelas*, 517 U.S. at 691 (1996), "the district court is at an institutional advantage" compared to us, *Townsend*, 305 F.3d at 542. "Accordingly, 'due weight' should be given to the inferences drawn from the facts by 'resident judges.'" *Townsend*, 305 F.3d at 542 (quoting *Ornelas* at 698).

With this in mind, we turn to the events leading to Officer Lane's patdown and continued detention of Bost. After Officer Lane lawfully asked Bost to step out of the car, Bost reached his hand between the center console and a child's seat in the front passenger seat of the car. Such a motion, it was reasonable to suspect, might constitute an attempt to destroy or conceal evidence of a crime or, more dangerously, to reach for a weapon. *See Johnson*, 555 U.S. at 327 ("To justify a patdown of the driver . . . the police must harbor *reasonable suspicion* that the person subjected to the frisk is armed and dangerous." (emphasis added)). So Bost's reaching of his hand out of sight justified Officer Lane's subsequent patdown and further detention of Bost. Officer Lane's treatment of Bost immediately prior to and also during the patdown—the threats, coarse language, and rough manhandling—may have been unpleasant, but did not affect the search and so did not violate the Fourth Amendment.

After patting down the handcuffed Bost, Officer Lane continued to detain him. The use of handcuffs during a traffic stop does not violate the Constitution. *See, e.g.*, *Houston v. Clark Cnty. Sheriff Deputies John Does*, 174 F.3d 809, 815 (6th Cir. 1999). Here, Officer Lane's perception of the possibility of danger warranted his use of handcuffs as a precaution. *See ibid.*

During Officer Lane's discussion with the still-handcuffed Bost, the former noticed the latter chewing, and so reached his hand into his mouth. Bost bit Officer Lane, and the two

wrestled. As the district court correctly concluded, Officer Lane's reaching into Bost's mouth did violate the Constitution.

**2**

As we explained in the previous section, Bost's actions gave Officer Lane a reason to suspect that Bost might threaten his safety. This reasonable suspicion justified Officer Lane's handcuffing, pat-down, and continued detention of Bost. Bost's reaching with his hands out of view is relevant in this case because they triggered Officer Lane's suspicion that Bost might arm himself and pose an immediate danger.

An action in one context may be a reason to suspect that a detainee is armed and dangerous, although a similar action in another context is not by itself a reason to suspect ongoing drug crime. For example, Bost cites *Townsend* for the proposition that an officer's observation of three cell phones does not justify investigatory detention. But the officer in *Townsend* suspected that the defendant in that case was a drug dealer and detained him *on that basis*. We later held that suspicion to have been unreasonable. Officer Lane, by contrast, searched and detained Bost because he suspected that Bost might threaten his safety. This suspicion was reasonable because of Bost's sudden movements and failure to comply with Officer Lane's lawful orders for Bost to get out of the car. Those orders, in turn, followed Officer Lane's questions about the presence of Bost's multiple cell phones. But, although Officer Lane seized Bost *after* observing and questioning Bost about three cell phones, Officer Lane did not seize Bost *because* he observed three cell phones. Bost would have *Townsend* stand for the proposition that, once an officer observes three cell phones, any suspicion of any crime is per se unreasonable. In fact, it stands for the proposition that the possession of multiple

cell phones by itself is not a reason to suspect drug dealing. Bost's citation to *Townsend* does not help his case.

Nor do the cases that Bost cites establish the proposition that nervousness by itself could not give rise to reasonable suspicion. Bost fails to distinguish between officer-safety cases such as our case, on the one hand, and drug cases, on the other. For example, Bost cites *United States v. Blair*, 524 F.3d 740 (6th Cir. 2008), for the propositions that a "defendant's nervousness, reaching under the seats, and refusal to give consent to search did not gave [*sic*] rise to reasonable articulable suspicion," Appellant Br. 9; *see also id.* 24-26, and that "the purpose of the traffic stop would have been completed almost immediately" after Officer Lane obtained Bost's license and registration, *id.* 18. But "Bost's alleged act of putting his hand in between the center console and a child's seat in the front passenger seat is" *not* "directly analogous to the *Blair* defendant's action of reaching under the seat while acting nervous." *Id.* 26 (suggesting that it is). The officer in *Blair*, like the officer in *Townsend*, indicated that he suspected drug crime, not dangerous weapons, and detained the defendant on that basis. So our holding in *Blair* is best read as denying that an officer who only observes a driver's nervousness can reasonably suspect that driver of drug crimes.

Other cases in which we have affirmed the suppression of evidence also concerned police officers obviously unconcerned for their safety. In *United States v. Richardson*, a police officer spoke to a driver, returned to his police car, shook the defendant's hand, and only then searched for (and found) the later-suppressed drugs. 385 F.3d 625, 628 (6th Cir. 2004). In *United States v. Saperstein*, a traveler at an airport responded calmly to lengthy questioning by drug-enforcement police before they seized his bag and, after some time, searched it to find later-suppressed drugs. 723 F.2d 1221 (6th Cir. 1983). The officers in *Townsend* and in *Blair* did not

8

fear for their safety, as evidenced by each officer "return[ing] to his patrol car," *Townsend*, 305 F.3d at 539, after initially conversing with the defendant. *See also Blair*, 524 F.3d at 745 (observing that the officer "collected [the defendant's] license and returned to the patrol car").

When officers confront a nervous defendant but do not suspect that he is armed and dangerous, it is unreasonable for them to suspect drug crime on the sole ground of a defendant's mere nervousness. The foregoing cases show that this is the doctrine. The judge-made law follows common sense in this case, as it often does. It is relatively likely that a driver made nervous by being pulled over is *not* committing drug crime, even as it could be likely for an officer to *suspect* that the driver is hiding drugs. So it is unreasonable for an officer to search for drugs solely on the basis of that suspicion. But this judgment does not demand the rule that Bost suggests: that it is unreasonable for an officer to search for weapons on the basis of a defendant's activity that presages violence.

Such a search is reasonable for a couple of reasons. First, the nervousness that follows getting pulled-over is less likely to lead to behavior that causes officers to suspect violence, such as sudden movements and refusal to follow directions, than it is to lead to behavior that causes officers to suspect drugs, such as apologies, trembling hands, and distressed expressions. Second, the difference in downside risk changes how a prudent officer would calculate "*reasonable* suspicion." The risk of under-identifying drug crime is a bad result: continued drug crime. But the risk of under-identifying the sort of dangerous weapons at issue here is a much worse result: a pulled-over driver shooting an officer. That risk justifies erring more often on the side of an invasive search. *See Terry*, 392 U.S. at 24-27 (distinguishing an officer's need for safety from the investigation of possibly criminal activity).

9

**B**

We have discussed the constitutionality of the pull-over, patdown, and continued detention. We have acknowledged the unconstitutionality of the search of Bost's mouth, which immediately preceded the discovery of the evidence that Bost moved to suppress. We now turn to the district court's rationale for denying Bost's motion: the officers' discovery of the cocaine was inevitable even before the unconstitutional search.

As a general matter, courts exclude evidence produced or discovered by illegal government activity. This "exclusionary rule prohibits the admission of evidence seized in searches and seizures that are deemed unreasonable under the Fourth Amendment . . . ." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)). The exclusionary rule is meant to deter government agents from acting illegally.

But "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense." *Nix v. Williams*, 467 U.S. 431, 444 (1984) (footnote omitted). "Because we believe the applicability of the inevitable discovery exception to this case is a mixed question [of law and fact], we shall review the district court's decision de novo." *Kennedy*, 61 F.3d at 497.

"[T]he inevitable discovery exception to the exclusionary rule applies when the government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered." *Id.* at 499. Because the initial

10

patdown *was* constitutional, our inevitable-discovery inquiry begins when Officer Lane put his finger into Bost's mouth.

The fact that the first bag of cocaine was discovered on the ground near the initial pat down is a compelling fact establishing that the disputed evidence inevitably would have been discovered. The discovery of the one bag of cocaine sufficed to justify Bost's arrest; it also would have led to the discovery of the other bags. So the inevitable-discovery exception applies here.

**III**

In sum, we hold that Bost's traffic violation justified Officer Lane's order that he get out of the car, Bost's sudden hand movements and temporary refusal to cooperate justified Officer Lane's actions until he put his finger in Bost's mouth, and that Officer Lane or his colleagues inevitably would have discovered the evidence that Bost moved to suppress even if Officer Lane had not put his finger into Bost's mouth. For the foregoing reasons, we AFFIRM the judgment of the district court.