NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0321n.06

No. 23-3562

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 24, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| TRAYNAL SHERRELL, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: BOGGS, COOK, and NALBANDIAN, Circuit Judges.

BOGGS, Circuit Judge. A jury convicted Traynal Sherrell of distribution of a controlled substance, and the district court sentenced him to 63 months of imprisonment. On appeal, he argues that the district court erred by denying his motion to suppress the drug evidence and failing to hold an evidentiary hearing on that motion. For the following reasons, we affirm.

**I**

On February 21, 2019, at around 6:44 am, a confidential informant[1] contacted Detective Todd Gillilan on his cell phone. The CI told Gillilan about a suspicious package at the Akron, Ohio, FedEx distribution hub. The CI provided Gillilan with the package's specific 12-digit tracking number. Gillilan then called the FedEx hub to "ascertain the particulars" of the package.

---

[1] Detective Gillilan refers to his tipster as a "confidential source." We agree with the district court that this means the source is likely known to Gillilan and so "confidential source" is synonymous with "confidential informant" in this case. *See United States v. Elkins*, 300 F.3d 638, 651 (6th Cir. 2002) ("The phrase 'confidential informant[]' . . . implies a tipster whose identity is known to the police. That is what is kept 'confidential.'") (emphasis omitted).

The hub employees confirmed its existence and said that they "would arrange [for Gillilan] to investigate the [package]." Aff. of Detective Gillilan, DE 21-1.

Detective Gillilan went to inspect the package later that same day. It was a roughly 9-pound parcel shipped from a "Traynal Sherrell" in Los Gatos, California to a "Timaeus Foster" in Canton, Ohio. According to Gillilan, Sherrell was known to law enforcement in the area as being involved in drug trafficking. Gillilan also noted that the package was shipped overnight with no signature required on delivery—a total of $200 in shipping costs. Gillilan next had the sender's and recipient's information run through databases. The info on the package checked out as to Traynal Sherrell. But the recipient's name, "Timaeus Foster," did not match the name associated with the address, "Timothy Foster."[2]

These facts, coupled with the confirmation of his CI's highly specific tip, led Gillilan to believe that the package contained illegal narcotics, proceeds from drug trafficking, or both—so he placed it in a lineup for a dog sniff. His certified drug dog, Canine Cash, made a positive alert on the package. Gillilan submitted an affidavit to that effect and applied for a search warrant, which an Ohio Common Pleas Court granted. Police searched the package and found two bricks of cocaine.

On March 4, 2020, a grand jury indicted Sherrell on one count of distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii). Sherrell moved the district court to suppress the drug evidence. The district court denied the motion. It reasoned that the CI's highly specific tracking-number tip, the details about the package's shipping characteristics and addressee, the fact that it was being shipped from a known drug-supplying location, and Detective

---

[2] It was later discovered that "Timaeus" was a real person associated with the recipient's address. But that is irrelevant. When probing into reasonable suspicion, we look to what the officer knew or suspected at the time. *See United States v. Alexander*, 540 F.3d 494, 501 (6th Cir. 2008).

Gillilan's expertise provided reasonable suspicion to detain the package for further investigation. And with the positive dog sniff, the issuance of a search warrant was proper.

The case proceeded to trial and, on February 23, 2023, a jury convicted Sherrell. The district court sentenced him to 63 months of imprisonment. This timely appeal followed.

**II**

When reviewing a denial of a motion to suppress, we review factual findings for clear error and legal conclusions de novo. *United States v. Rogers*, 97 F.4th 1038, 1041 (6th Cir. 2024). The evidence is reviewed "in the light most likely to support the district court's decision." *United States v. Powell*, 847 F.3d 760, 767 (6th Cir. 2017) (quoting *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000)). We will affirm the denial of a motion to suppress "if the district court's conclusion can be justified for any reason." *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019) (quoting *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994)).

**A. Reasonable Suspicion**

Sherrell argues that Detective Gillilan did not have reasonable suspicion to detain the package, and thus the dog sniff was "fruit of the poisonous tree" and the subsequent warrant to search the package was not supported by probable cause. We disagree.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. But a "reasonable, temporary detention of a reasonably suspicious postal package prior to establishing probable cause . . . for the time necessary to obtain a drug detection canine or otherwise conduct an investigation does not violate the Fourth Amendment." *United States v. Robinson*, 390 F.3d 853, 870 (6th Cir. 2004) (quoting *United States v. Banks*, 3 F.3d 399, 403 (11th Cir. 1993)). In other words, "only reasonable suspicion, and not probable cause, is necessary

3

in order to briefly detain a package for further investigation, such as examination by a drug-sniffing dog." *Alexander*, 540 F.3d at 500–01 (quoting *Robinson*, 390 F.3d at 870).

Because "reasonable suspicion" is a "commonsense, non-technical conception," it is not amenable to precise articulation. *See United States v. Bost*, 606 F. App'x 821, 825 (6th Cir. 2015). Still, we have explained that it "requires that an officer have articulable reasons and a particularized and objective basis for assuming criminal activity is afoot." *Ibid.* (cleaned up). But since reasonable suspicion is not easily reduced to a "neat set of legal rules," we give "due weight" to the district court's inferences—even under de novo review. *Ibid.* (quoting *Ornelas v. United States*, 517 U.S. 690, 691, 698 (1996)). To determine whether reasonable suspicion existed, we look to the totality of the circumstances and do not "engage in a 'divide-and-conquer analysis' but consider factors as a whole." *United States v. Byrd*, No. 23-5116, 2024 WL 2210135, at *6 (6th Cir. May 16, 2024) (quoting *United States. v. Arvizu*, 534 U.S. 266, 273 (2002)).

In arguing that Detective Gillilan did not have reasonable suspicion to investigate the package, Sherrell faces a steep climb from the outset. When a CI provides specific information that is confirmed upon investigation, it is a strong indication of reliability and often justifies reasonable suspicion. *See United States v. Hunter*, 333 F. App'x 920, 924 (6th Cir. 2009) (holding that a CI's tip alone provided reasonable suspicion when the CI's information—a person driving in a specific car on a specific night—was later confirmed); *Byrd*, 2024 WL 2210135, at *8 (holding that a CI's "accurate predictions"—including matching suspects to license plates—provided reasonable suspicion); *United States v. Doxey*, 833 F.3d 692, 704 (6th Cir. 2016) (holding that a CI's later-corroborated description of a suspect's rusty white SUV supported reasonable suspicion). This is true even if the CI has not always been reliable or even if the CI provided only partially accurate information about the events at issue. *See United States v. McMurry*, 208 F.3d

216, 216 (6th Cir. 2000) (table). And if the corroborated information is highly specific and unavailable to the general public, it "enhances the probability that the information is true." *United States v. Padro*, 52 F.3d 120, 123–24 (6th Cir. 1995).

And we have held that many of the other indictors of criminal activity that are present here will support an officer's reasonable suspicion. *See, e.g.*, *Alexander*, 540 F.3d at 501 (holding that reasonable suspicion existed based on a waived signature, fictitious address, and package origin). Not only did Gillilan observe many recognized indicators of criminal activity upon inspecting the package, but he did so after receiving a highly specific tip from a known CI that led him directly to the package. This is more than enough to create reasonable suspicion to hold a package for a dog sniff.

Sherrell contends that the tip about the package should be discounted as "anonymous" and "unreliable." Appellant Br. at 23. Detective Gillilan, however, refers to the tip as coming from a "confidential source" that knew his phone number and called him. This is significant, as "[t]ips from known informants have more value than those from unknown ones." *Elkins*, 300 F.3d at 651. And even though the record does not provide any information about the CI's past reliability, in this case the CI gave Gillilan a 12-digit tracking number and precise location, which was confirmed before the package was detained.

Sherrell also argues that the other facts supporting reasonable suspicion were weak. But, as he did below, Sherrell attempts to pick apart each fact known to Gillilan and poke holes in each of them individually. Again, this "divide-and-conquer" strategy does not work against a totality-of-the-circumstances analysis. These facts on their own might not be enough to provide reasonable suspicion, but they take on more significance in light of what Gillilan already knew—that his source had zeroed in on a specific package with a specific tracking number. *See United States v.*

*Salas*, 820 F. App'x 405, 413 (6th Cir. 2020) (explaining that weaker indicators of criminal activity have more significance when coupled with stronger indicators in a totality analysis). This case is a textbook example of how known facts work together to create reasonable suspicion. A package shipped overnight with no signature required might not be inherently suspicious. A package shipped to a possibly incorrect or fictitious addressee is not necessarily suspicious. But a package, shipped overnight with no signature required to a possibly fictitious addressee, when a CI has just flagged that by its 12-digit tracking number as containing drugs—is quite suspicious.

Finally, Sherrell argues that a "seizure" occurred when Detective Gillilan "directed FedEx employees to remove the package from transit," and at that point there was no reasonable suspicion. Appellant Br. at 15. But a seizure occurs only "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Gant*, 112 F.3d 239, 241 (6th Cir. 1997) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

We have held that there is no meaningful interference in possessory interests when property is briefly detained in this type of situation. So that detention does not even implicate the Fourth Amendment. *See id.* at 241–42; *United States v. Caldwell*, 229 F.3d 1154 (6th Cir. 2000) (table) (holding that there was no Fourth Amendment concerns in removing a package from a UPS conveyor belt because "[i]f the canine had not alerted to the presence of narcotics, the continued delivery of the package would not have been interrupted" and "[t]he temporary removal . . . for purposes of subjecting the box to a dog sniff, did not create a meaningful interference with the defendant's possessory interest in the package"); *see also United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1162 (9th Cir. 2007) (holding that a short detention of a package containing cocaine at a FedEx facility did not implicate appellant's Fourth Amendment rights).

Here, Detective Gillilan called the FedEx facility to confirm the existence of the package and then went to investigate it on the same day. There is no evidence that a FedEx employee, at the direction of Gillilan, removed the package for such a prolonged period of time as to interfere with its delivery.[3] So, FedEx employees did not seize the package for the purposes of the Fourth Amendment.

Accordingly, the district court properly denied Sherrell's motion to suppress because Detective Gillilan had reasonable suspicion to detain the package for further investigation. Sherrell also argues that the dog sniff was improper and the subsequent warrant lacked probable cause. But these arguments are merely extensions of his main argument—that Gillilan lacked reasonable suspicion to investigate the package at the outset. In cases where dogs find drugs, the dominoes fall quickly and easily from the articulated reasonable suspicion. Because Gillilan had reasonable suspicion to detain the package, the dog sniff was justified. *See Robinson*, 390 F.3d at 870. And because the dog made a positive alert, the warrant was supported by probable cause. *See United States v. Diaz*, 25 F.3d 392, 393–94 (6th Cir. 1994) ("A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance.").

## B. **Evidentiary Hearing**

Sherrell also argues that the district court erred when it did not conduct an evidentiary hearing on his suppression motion. We review a district court's decision not to hold an evidentiary hearing on a motion to suppress for an abuse of discretion. *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019).

---

[3] Of course, a FedEx employee, acting as a non-governmental entity, cannot illegally seize a package as to violate the Fourth Amendment. But Sherrell argues that the FedEx employees were acting as police agents. We need not travel too far down that road, however, as there was no seizure that implicated the Fourth Amendment.

Sherrell did not ask the district court to hold an evidentiary hearing—neither in his motion to suppress nor in a separate motion. But he now argues that the court should have held a hearing because he made a "substantial, preliminary showing of material omissions" in the warrant affidavit. Appellant Br. at 34. "An evidentiary hearing is required only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (cleaned up).

Sherrell points to "several significant facts" that he claims were omitted from Gillilan's warrant affidavit. First, he says that Gillilan never averred that his CI was reliable and then contests the inferences that the state-court judge made from what Gillilan did include in his affidavit. Sherrell is not really arguing that Detective Gillilan made false statements in his affidavit, or even that he failed to include information about his CI's unreliability. *See United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). He is actually arguing that the affidavit was insufficient to support probable cause because Gillilan did not provide affirmative information about his CI's reliability. But this is not the kind of "omission" necessitating an evidentiary hearing. Conclusions about the sufficiency of the evidence justifying a search warrant "fall squarely within the type of challenges that can be resolved without an evidentiary hearing." *United States v. Goodwin*, 552 F. App'x 541, 548 (6th Cir. 2014) (quoting *United States v. Lawhorn*, 467 F. App'x. 493, 495 (6th Cir. 2012)).

Second, Sherrell argues that the district court needed to conduct a hearing to "pinpoint[] the precise moment of seizure and determine[] what Officer Gillilan knew at that moment . . . ." Appellant Br. at 37. However, the affidavit states what Gillian knew and at what time. He knew the package's location and tracking number when he called FedEx. And he knew the rest of the information justifying the detention when he arrived and investigated the package in person. But

8

more importantly, these arguments simply rehash Sherrell's legal arguments that there was an earlier seizure of the package and that there was no reasonable suspicion to justify it. A legal argument does not require an evidentiary hearing. *See Ickes*, 922 F.3d at 713.

Accordingly, the district court did not abuse its discretion by ruling on Sherrell's motion to suppress without conducting an evidentiary hearing.

**III**

For these reasons, the district court's judgment is **AFFIRMED**.